Richard H. Mays (State Bar No. 61043)
Williams & Anderson PLC
111 Center Street
Suite 2200
Little Rock, Arkansas 72201
Telephone: (501) 859-0575
Email: rmays@williamsanderson.com

George E. Hays (WA State Bar No. 53874)
P.O. Box 843
Bellevue, WA 98009
Telephone: (415) 566-5414
Email: georgehays@mindspring.com

Naomi Kim Melver (WA State Bar No. 52463)
P.O. Box 25
Greenbank, WA 98253
Telephone: (425) 336-3757
Email: nmelver@gmail.com

Counsel for Plaintiff

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 1 6 2018

JAMES W. McCORMACK, CLERK
.By:_____
DEP CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| SIERRA CLUB and NATIONAL PARKS CONSERVATION ASSOCIATION, | Civil Action No. |
| Plaintiffs, | |
| v. | NOTICE OF LODGING OF SETTLEMENT AGREEMENT |
| ENTERGY ARKANSAS, INC., ENTERGY POWER, INC., ENTERGY POWER, LLC, and ENTERGY MISSISSIPPI, INC., | |
| Defendants. | |

4:18-cv-854-BRW

Plaintiffs hereby provide notice to the Court of the lodging of the attached Settlement Agreement for the Court's review and approval. The relief set forth in this Settlement Agreement represents a full resolution of this Clean Air Act citizen suit.

This Settlement Agreement is not to be entered as an Order of the Court, however, until the completion of a forty-five (45) day review period provided to the United States Department of Justice and the Environmental Protection Agency by the Clean Air Act, 42 U.S.C. § 7604 (c)(3), and described in paragraph 47 of the Settlement Agreement. Following the conclusion of the forty-five day notice period, the Parties intend to review and take into account any comments submitted by the federal government, and thereafter move the Court to enter this Settlement Agreement.

Dated this 16th day of November, 2018

Respectfully submitted,

Richard H. Mays (Arkansas Bar No. 61043)
Williams & Anderson PLC
111 Center Street, Suite 2200
Little Rock, Arkansas 72201
Telephone: (501) 859-0575
Email: rmays@williamanderson.com

2

*George E. Hays*

---

George E. Hays (WA Bar. No. 53874)
P.O. Box 843
Bellevue, WA 98009
Telephone: (415) 566-5414
Email: georgehays@mindspring.com

*Naomi Kim Melver*

---

Naomi Kim Melver (WA Bar No. 52463)
P.O. Box 25
Greenbank, WA 98253
Telephone: (425) 336-3757
Email: nmelver@gmail.com

*Counsel for Plaintiffs Sierra Club and
National Parks Conservation Association*

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| Sierra Club and National Parks Conservation Association, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No: _____ |
| vs. | ) ) | **SETTLEMENT AGREEMENT AND CONSENT JUDGMENT** |
| Entergy Arkansas, Inc., Entergy Power, LLC, and Entergy Mississippi, Inc. | ) ) ) | |
| Defendants. | ) ) | |

Date lodged in Court:        November 16, 2018

Date entered by Court:        _____

WHEREAS, Sierra Club and National Parks Conservation Association ("Plaintiffs") brought this action against Entergy Arkansas, Inc., Entergy Power, LLC, and Entergy Mississippi, Inc. (each a "Defendant" and collectively "Defendants") pursuant to Section 304 of the Clean Air Act (the "Act"), 42 U.S.C. § 7604, for declaratory and injunctive relief and assessment of civil penalties for certain alleged violations of the Act and its implementing regulations at the Independence and White Bluff Steam Electric Stations;

WHEREAS, Defendants deny Plaintiffs' allegations and maintain that they have been and remain in compliance with the Act and are not liable for civil penalties or injunctive relief, and nothing herein shall constitute an admission of any fact, conclusion of law, or liability;

WHEREAS, on September 27, 2016, the U.S. Environmental Protection Agency ("EPA") published a federal implementation plan ("FIP") for Arkansas titled "Promulgation of Air Quality Implementation Plans; State of Arkansas; Regional Haze and Interstate Visibility Transport Federal Implementation Plan," 81 Fed. Reg. 66,332 (Sept. 27, 2016), replacing the previously disapproved portions of Arkansas' state implementation plan under the Clean Air Act, 42 U.S.C. § 7491, and Regional Haze Rule, 40 C.F.R. § 51.301 *et seq.*;

WHEREAS, the FIP imposes requirements on the Independence, White Bluff, and Lake Catherine Steam Electric Stations;

WHEREAS, the Parties each petitioned for review of the FIP in the United States Court of Appeals for the Eighth Circuit in separate actions consolidated under Case No. 16-4270;

WHEREAS, the Parties desire to settle all matters and claims by execution and entry of this Agreement and avoid the costs, delay, and uncertainty of litigation;

WHEREAS, the Parties agree that the settlement of this action through this Agreement without further litigation is in the public interest, and is a fair, reasonable, and appropriate means of resolving the matter;

WHEREAS, the Parties anticipate that this Agreement will achieve significant reductions of air emissions over time and thereby significantly improve air quality;

WHEREAS, pursuant to 42 U.S.C. § 7604(c)(3) of the Act, this Agreement is being forwarded to the United States Department of Justice and to the EPA for the statutorily-mandated forty-five (45) day review period; and

WHEREAS, the Parties consent to the entry of this Agreement without trial of any issues;

NOW, THEREFORE, it is hereby ORDERED AND DECREED as follows:

### JURISDICTION, VENUE, AND APPLICABILITY

1.     This Court has jurisdiction over the Parties to and the subject matter of this action under Section 304(a) of the Act, 42 U.S.C. § 7604(a), and under 28 U.S.C. §§ 1331 and 1355(a).   For the purposes of entering this Agreement, the underlying Complaint, and enforcing this Agreement, Defendants waive all objections and defenses

3

that they may have to the Court's jurisdiction over this action, entry or enforcement of the Agreement, or venue in this judicial district.

2.     Venue is proper in this Judicial District under Section 304(c) of the Act, 42 U.S.C. § 7604(c), and under 28 U.S.C. §§ 1391 and 1395.

3.     The Parties consent to entry of this Agreement without further notice.

4.     Upon the Date of Entry, the provisions of this Agreement shall apply to, be binding upon, and inure to the benefit of the Parties, as well as to each individual Party's successors and assigns.

5.     If any Defendant proposes to sell or transfer an operational or ownership interest in any of the Three Plants, as defined below, to an entity unrelated to Defendants ("Third Party"), the Defendants shall advise the Third Party in writing of the existence of this Agreement prior to such sale or transfer and shall send a copy of such written notification to the Plaintiffs at least sixty (60) days before such proposed sale or transfer.

6.     Except as provided below, no sale or transfer of an operational or ownership interest in any of the Three Plants by any Defendant to a Third Party shall take place before the Third Party and Plaintiffs have executed, and the Court has approved, a modification pursuant to this Agreement making the Third Party a party to this Agreement and jointly and severally liable with Defendants for all the requirements of this Agreement that are applicable to the transferred or purchased interests.   This Paragraph does not apply to the sale or transfer of an operational or ownership interest

4

in one or more of the Three Plants from a Third Party to any Defendant or to any
Affiliate of any one of the Defendants, as defined below.   Furthermore, this Paragraph
does not apply to the amendment of any agreement(s) between any Defendant and any
Co-owners, as defined below, concerning operation of any of the Three Plants, so long
as the amendment would not prevent Defendants from complying fully with this
Agreement.

## DEFINITIONS

7.     Unless otherwise expressly provided herein, terms used in this Agreement
that are defined in the Clean Air Act, 42 U.S.C. §§ 7401-7671q, or regulations
implementing the Clean Air Act, shall have the meaning set forth in the Clean Air Act
or those regulations.

8.     Whenever the terms set forth below are used in this Agreement, the
following definitions shall apply for the purposes of this Agreement:

a.  "ADEQ" means the Arkansas Department of Environmental Quality.

b.  "Affiliate" means, when used in connection with any Defendant, a legal
    entity directly or indirectly owned by Entergy Corporation, and, when
    used in connection with any Co-owner, a legal entity under common
    ownership or control.

c.  "APC&EC" means the Arkansas Pollution Control and Ecology
    Commission.

d.  "APSC" means the Arkansas Public Service Commission.

e.  "Best efforts to fulfill the obligation" include using best efforts to
anticipate any potential Force Majeure Event and to address the effects of
any such event both as it is occurring and after it has occurred, such that
the delay and/or violation are minimized to the greatest extent possible.

f.  "Challenge" means, for purposes of Paragraphs 17, 18, 21, 22, and 23, the
filing or funding of comments or administrative or judicial proceedings.

g.  "Clean Air Act," "CAA," or "Act" means the federal Clean Air Act, 42
U.S.C. §§ 7401-7671q, and its implementing regulations.

h.  "Coal" means all forms of coal, including but not limited to bituminous
coal, sub-bituminous coal, and lignite, and petroleum coke.

i.  "Co-owners" means, with respect to Independence, Arkansas Electric
Cooperative Corporation, City Water & Light of Jonesboro, East Texas
Electric Cooperative, Osceola Municipal Light & Power, Conway
Corporation, and City of West Memphis, and, with respect to White Bluff,
Arkansas Electric Cooperative Corporation, City Water & Light of
Jonesboro, Conway Corporation, and City of West Memphis.

j.  "Date of Entry" means the date this Agreement is approved or signed by
the United States District Court Judge.

k.  "Date of Lodging" means the date the notice of lodging of this
Agreement is filed with the Clerk of the Court for the United States
District Court for the Eastern District of Arkansas.

6

l.  "Effective Date" means the date the Agreement is entered by the district court judge or, if the approved Agreement is appealed and upheld, the date of the mandate from the court of appeals.

m.  "Entergy Arkansas" means Entergy Arkansas, Inc.

n.  "EMI" means Entergy Mississippi, Inc.

o.  "EPLLC" means Entergy Power, LLC, including its predecessor Entergy Power, Inc.

p.  "EPA" means the United States Environmental Protection Agency.

q.  "FLMs" mean the Federal Land Managers.

r.  "FOIA" means the federal Freedom of Information Act.

s.  "Force Majeure Event" means an event that has been or will be caused by circumstances beyond the control of Defendants, one or more of their contractors, or any entity controlled by one or more Defendants or Affiliates, that delays or prevents the performance of any obligation related to this Agreement or otherwise causes a violation of Paragraphs 9 through 16 of this Agreement despite Defendants' best efforts to fulfill the obligation.   Unanticipated or increased costs or expenses associated with the performance of Defendants' obligations under this Agreement shall not constitute a Force Majeure Event.   A Force Majeure Event includes, but is not limited to, construction, labor or equipment delays; acts of God; or acts of war; terrorism; or failure of a permitting authority to issue any

7

necessary permit, order, or other approval with sufficient time for that

Defendant to achieve compliance with any requirement of this Agreement

if the failure of the permitting authority to act is beyond the control of the

Defendant and the Defendant has taken all reasonable steps available to it

to obtain the necessary permit, order, or other approval.

t. "Independence" means the Independence Steam Electric Station, which

consists of two coal-fired electric utility steam generating units (Units 1

and 2) with nameplate capacity of approximately 900 megawatts each,

located in Independence County, Arkansas.

u. "Lake Catherine" means the Lake Catherine Steam Electric Station, which

consists of one operating fossil-fuel fired electric utility steam generating

unit (Unit 4) primarily fired with natural gas of approximate nameplate

capacity of 528 megawatts located in Hot Spring County, Arkansas.

v. "lbs/MMBtu" means pounds per million British thermal units.

w. "LNB/SOFA" means low NOx burners and separated over-fire air.

x. "MW" means megawatts.

y. "NOx" means nitrogen oxides.

z. "NPCA" means National Parks Conservation Association.

aa. "Parties" means Sierra Club, NPCA, Entergy Arkansas, EMI, and EPLLC,

and "Party" means one of the Parties.

bb. "RE" means renewable energy.

8

cc. "Regional Haze Plan" refers to any proposed or final: (i) revised Regional Haze federal implementation plan; (ii) ADEQ replacement Regional Haze state implementation plan (iii) Regional Haze-related administrative order(s) between any Defendant and ADEQ; (iv) EPA Regional Haze state implementation plan approval(s); or (v) EPA Regional Haze FIP withdrawal entered into or promulgated by EPA or ADEQ to address regional haze requirements, including but not limited to best available control technology and reasonable progress under the Clean Air Act, 42 U.S.C. § 7491 and 40 C.F.R. § 51.308, or any successor thereto.

dd. "$SO_2$" means sulfur dioxide.

ee. "Three Plants" mean White Bluff, Independence, and Lake Catherine.

ff. "White Bluff" means the White Bluff Steam Electric Station, which currently consists of two coal-fired electric utility steam generating units (Units 1 and 2) with nameplate capacity of approximately 900 megawatts each, located in Jefferson County, Arkansas.

### PLANT SPECIFIC OBLIGATIONS

9. No later than December 31, 2028, Entergy Arkansas shall permanently cease the combustion of coal at White Bluff.

10. No later than June 30, 2021, Entergy Arkansas shall ensure that the emissions of $SO_2$ at each White Bluff Units 1 and 2 shall not exceed 0.6 lbs/MMBtu based on a 30-boiler-operating-day rolling average.

9

11.     With respect to emissions of NOx at White Bluff Units 1 and 2, Entergy Arkansas shall continue to operate the LNB/SOFA, comply with all provisions specified in 40 C.F.R. § 63.10021(e), or any successor thereto, and prepare and submit to Plaintiffs annual reports consistent with and meeting the requirements of 40 C.F.R. § 63.10021(e)(8), or any successor thereto, by March 31 for the previous calendar year.

12.     No later than December 31, 2030, Entergy Arkansas shall permanently cease the combustion of coal at Independence.

13.     No later than June 30, 2021, Entergy Arkansas shall ensure that the emissions of $SO_2$ at Independence Units 1 and 2 shall not exceed 0.6 lbs/MMBtu based on a 30-boiler-operating-day rolling average.

14.     With respect to emissions of NOx at Independence Units 1 and 2, Entergy Arkansas shall continue to operate the LNB/SOFA, comply with all provisions specified in 40 C.F.R. § 63.10021(e), or any successor thereto, and prepare and submit to Plaintiffs annual reports consistent with and meeting the requirements of 40 C.F.R. § 63.10021(e)(8), or any successor thereto, by March 31 for the previous calendar year.

15.     No later than December 31, 2027, Entergy Arkansas shall permanently cease all operations of existing units (Units 1-3, which are currently retired, and Unit 4, which is currently operating) at Lake Catherine.    This Paragraph does not prohibit Entergy Arkansas from using the site and its infrastructure for purposes other than operating the existing units.

16.    Defendants shall commence development of and/or present recommendations to the appropriate regulatory agencies, if any, for the development of RE projects, as described below, in a total amount of 800 MW (with at least half (400 MW or more) on or before December 31, 2022, and the remainder (400 MW or less) on or before December 31, 2027).    Each Defendant will seek the appropriate regulatory approvals, if any, for any RE projects that it may determine to develop in its sole discretion.    For purposes of satisfying Defendants' RE obligation under this Paragraph 16, the RE projects may include wind, solar, geothermal, and run of the river hydro, including both commercial and residential (e.g., rooftop solar) scale projects and energy storage technologies.    Further, for purposes of satisfying Defendants' RE obligation under this Paragraph 16, the methodology for accounting for RE projects shall be based upon the nameplate rating of the RE projects being developed or otherwise presented to the appropriate regulatory agencies pursuant to this Paragraph by Defendants or by Co-owners (including the Co-owners' respective Affiliates) including, but not limited to, the nameplate rating of all RE projects that (i) are to be owned, constructed, or built by Defendants or Co-owners; (ii) are to be acquired, purchased, or leased by Defendants or Co-owners; (iii) otherwise are to be procured by Defendants or Co-owners, for example, through Defendant- or Co-owner-sponsored offerings or tariffs incentivizing or allowing customers to pursue distributed renewable generation; and (iv) are to be placed into service, or made available through an arrangement such as a purchase power agreement.    The foregoing RE projects explicitly shall include purchase power

11

agreements with deliveries commencing January 1, 2018, and thereafter, and purchase

power agreements that Entergy Arkansas already has presented to and received

approval from the Arkansas Public Service Commission ("APSC") in APSC Docket No.

15-014-U (Stuttgart Solar) and in APSC Docket No. 17-041-U (Chicot Solar), which

resources shall count toward satisfying Defendants' RE obligation under this

Paragraph.

## ADDITIONAL OBLIGATIONS OF THE PARTIES

17.     The Parties shall not Challenge the provisions of any Regional Haze Plan

related to this Settlement Agreement regarding White Bluff, Independence or Lake

Catherine.    Each Party retains the right to Challenge any provision of a Regional Haze

Plan that is not included in, is inconsistent with, or is beyond the scope of this

Settlement Agreement.

18.     If a court reverses or remands any Regional Haze Plan after the entry of

this Agreement, Plaintiffs shall not file or fund Regional Haze Plan comments, or file or

fund any Regional Haze Plan Challenge, that are inconsistent with the provisions of this

Agreement regarding the cessation of coal combustion at White Bluff and Independence

and the cessation of currently operating generation at Lake Catherine in Paragraphs 9,

12, and 15 or the emission limitations, compliance obligations, and compliance dates in

Paragraphs 10-11 and 13-14.    Plaintiffs shall not seek additional emission controls for

any of the Three Plants beyond those specifically required by this Agreement.

Plaintiffs retain the right to file comments or Challenge any provision of any Regional

12

Haze Plan that is not included in, or is inconsistent with, or is beyond the scope of this Agreement, and Defendants retain the right to oppose any such comments or Challenge.

19.     Within 65 days of the Effective Date, Plaintiffs shall file a stipulation of dismissal pursuant to Fed. R. App. P. 42(b) dismissing their petition to review in *National Parks Conservation Association v. EPA*, No. 16-4309 (8th Cir. filed Nov. 28, 2016), with each party to bear its own costs and attorney fees.

20.     Within 65 days of the Effective Date, Sierra Club shall withdraw all pending FOIA requests to EPA related in whole or in part to White Bluff, Independence, and Lake Catherine. The Parties agree to confer and jointly file an appropriate status or other report or motion with the U.S. District Court for the Eastern District of Louisiana in *Entergy Louisiana, L.L.C. and Entergy Arkansas, Inc. v. EPA*, No. 14-1827, to keep the litigation in abeyance consistent with the timeline in this Paragraph.    Plaintiffs agree not to submit new FOIA requests seeking the same or similar information sought in the to-be-withdrawn requests nor to submit any new FOIA requests concerning matters subject to the release of claims herein.

21.     Plaintiffs shall not Challenge any ADEQ or APC&EC approvals, including permits and variances, necessary for compliance with this Agreement, any Regional Haze Plan, as well as any new source review permit or Title V renewals, modifications, or other permits, variances, or administrative orders for White Bluff, Independence, or Lake Catherine; however, this provision does not apply if Defendants propose a

significant increase in emissions, as defined in 40 C.F.R. § 52.21(b)(23), or any successor thereto, of any regulated pollutant except as it relates to pollution control equipment modifications at the plant and/or changes in plant operations necessary to meet the requirements of this Agreement, including but not limited to increases in carbon monoxide emissions associated with optimization of the LNB/SOFA at White Bluff and Independence.   Within 65 days of the Effective Date, Sierra Club shall voluntarily dismiss *In the Matter of Revisions to the Arkansas State Implementation Plan, Regional Haze SIP Provisions for 2008-2018 Planning* Period, APC&EC Docket No. 18-002-MISC (filed Sept. 6, 2018), with prejudice pursuant to APC&EC Regulation 8 and the Arkansas Rules of Civil Procedure, with each party to bear its own costs and attorney fees.

22.   Plaintiffs shall not Challenge Defendants or their Co-owners seeking any approvals that are necessary to implement the terms of this Agreement.   Plaintiffs shall not oppose Defendants or their Co-owners in regulatory proceedings regarding the recovery of costs or other treatment related to or occasioned by the obligations in this Agreement, including but not limited to costs to install and operate LNB/SOFA at Independence or White Bluff, meeting the $SO_2$ emissions limitations, and/or any alteration of depreciation schedules, and/or recovery of undepreciated capital costs remaining at the time of end of coal use, as a result of this Agreement. Notwithstanding the forgoing, Plaintiffs reserve the right to oppose Defendants or their Co-owners as they seek any approvals related exclusively to replacement generation capacity for the Three Plants, and Defendants reserve their rights to oppose Plaintiffs,

except however, Plaintiffs shall not object to the need for replacement generation in any appropriate and relevant proceeding relating to the need for replacement generation before the appropriate regulatory body to the extent such proceeding relates to or is occasioned by the requirements of this Agreement; however, Plaintiffs expressly retain the right to contest the amounts by fuel type or siting of replacement generation, and Defendants reserve their rights to oppose Plaintiffs.

23.     Plaintiffs shall not Challenge any determinations or approvals by any government agency, including but not limited to ADEQ, FLMs, APC&EC and EPA, as the case may be, that no additional air pollution controls or emission limitations are necessary or required for White Bluff, Lake Catherine or Independence for the Regional Haze program beyond the controls and emission limitations set out in this Agreement.

24.     The Parties shall not circumvent their obligations in this Agreement by funding any third party taking any action that the Parties themselves are prohibited from taking.

## NOTIFICATIONS AND RECORDKEEPING

25.     All notifications related to this Agreement shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing and shall be copied to all Parties by email.

For Sierra Club:

Director of Environmental Law Program
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA    94162
(415) 977-5709
kristin.henry@sierraclub.org

For NPCA

National Parks Conservation Association
777 Walnut Street
Suite 200
Knoxville, TN    37902
Attention: Stephanie Kodish, Senior Director, Clean Air Program
(800) 628-7275
skodish@npca.org

For Defendants:

William B. Glew, Jr.
Associate General Counsel
Entergy Services, LLC
639 Loyola Avenue, 22nd Floor
New Orleans, Louisiana 70113
504-576-3958
wglew@entergy.com

and

Kimberly Bennett
Assistant General Counsel – Regulatory Legal Services
Entergy Services, LLC
425 W. Capitol Avenue
Little Rock, AR 72201
(501) 377-5715
kbenne3@entergy.com

## EFFECT OF SETTLEMENT

26.     This Agreement represents full and final settlement between the Parties. Plaintiffs release and waive any and all claims, including continuing claims, that could have first accrued prior to the Date of Lodging that they may have against (a) Defendants and their employees, agents, officers, directors, and Affiliates and (b) their Co-owners and their employees, agents, officers, directors, and Affiliates concerning White Bluff, Independence, and Lake Catherine, based on any federal environmental statute or regulation, including under the Clean Air Act, Clean Water Act ("CWA"), the Resource Conservation and Recovery Act ("RCRA"), the Comprehensive Environmental Response, Compensation and Liability Act, the Safe Drinking Water Act, or any similar environmental state statute or regulation, or any common law tort.   This release will also include all claims, if any, that accrue on or after the Date of Lodging related to coal combustion residuals at Independence and White Bluff pursuant to the CWA, RCRA, EPA's coal combustion residuals regulations, or similar state authority. The release of the Co-owners provided by this Paragraph will be void with respect to any individual Co-owner if such Co-owner or its Affiliates take action either to oppose entry of this Agreement by the Court or to block Defendants from complying with Paragraphs 9, 12, or 15 of this Agreement.

27.     The Parties acknowledge and agree that specific performance and injunction are the only appropriate remedies for any violation of this Agreement, and under no circumstances shall monetary damages be allowed for any breach of this

Agreement.    In addition, no motion for specific performance or injunction shall be brought or maintained until the Dispute Resolution process has been completed.

28.    The failure of a Party to comply with any requirement contained in this Agreement will not excuse the obligation to comply with other requirements contained herein.

## DISPUTE RESOLUTION

29.    The dispute resolution procedure provided by this Section shall be available to resolve all disputes arising under this Agreement, provided that nothing shall preclude the Parties from resolving disputes without invoking this Section.

30.    The dispute resolution procedure required herein shall be invoked by one Party ("Noticing Party") giving written notice to the other Parties ("Receiving Parties") advising of a dispute pursuant to this Section.    The notice shall describe the nature of the dispute and shall state the Noticing Party's position with regard to such dispute. The Receiving Parties shall acknowledge receipt of the notice, and the Parties shall expeditiously schedule a meeting to commence informal negotiations not later than fourteen (14) days following receipt of such notice.

31.    Disputes submitted to dispute resolution under this Section shall, in the first instance, be the subject of informal negotiations among the Parties.    Such period of informal negotiations shall not extend beyond thirty (30) days from the date of the first meeting among the Parties' representatives unless they agree in writing to shorten or extend this period.

32.     If the Parties are unable to reach agreement during the informal negotiation period, the Noticing Party shall provide Receiving Parties with a written summary of its position regarding the dispute.   The written position provided by Noticing Party shall be considered binding unless, within forty-five (45) days thereafter, the Receiving Parties seek judicial resolution of the dispute by filing a petition with this Court.   The Noticing Party may respond to the petition within forty-five (45) days of filing.   The time periods set out in this Section may be shortened or lengthened upon motion to the Court of one of the Parties to the dispute, explaining the Party's basis for seeking such a scheduling modification.

33.     The Court shall not draw any inferences or establish any presumptions adverse to any Party as a result of invocation of this Section or the Parties' inability to reach agreement.

34.     As part of the resolution of any dispute under this Section, in appropriate circumstances the Parties may agree, or this Court may order, an extension or modification of the schedule for the completion of the activities required under this Agreement to account for the delay that occurred as a result of dispute resolution. Defendants shall not be precluded from asserting that a Force Majeure Event has caused or may cause a delay in complying with the extended or modified schedule.

35.     The Court shall decide all disputes pursuant to applicable principles of law for resolving such disputes.   In their initial filings with the Court under this

Section, the Parties shall state their respective positions as to the applicable standard of law for resolving the particular dispute.

## FORCE MAJEURE

36.     The Parties agree that Defendants' obligations pursuant to this Agreement shall be subject to the following Force Majeure provisions.

37.     **Notice of Force Majeure Events.**   If any event occurs or has occurred that may delay or prevent compliance with or otherwise cause a violation of any Defendant's obligations under this Agreement as to which such Defendant intends to assert a claim of Force Majeure, that Defendant shall notify Plaintiffs in writing as soon as practicable, but in no event later than fourteen (14) business days following the date that Defendant first knew, or by the exercise of due diligence should have known, that the event caused or may cause such delay or violation.   In this notice, the Defendant shall reference this Section and describe the anticipated length of time that the delay or violation may persist, the cause or causes of the Force Majeure Event, all measures taken or to be taken by the Defendant to prevent or minimize the delay or violation, the schedule by which the Defendant proposes to implement those measures, and the Defendant's rationale for attributing the failure, delay, or violation to a Force Majeure Event.   The Defendant shall adopt all reasonable measures to avoid or minimize such failures, delays, or violations.   The Defendant shall be deemed to know of any circumstance which it, its contractors, or any entity controlled by the Defendant, knew or should have known.

20

38.    **Failure to Give Notice.**   If a Defendant fails to comply with the notice requirements of this Section, the Plaintiffs may seek to void such claim for Force Majeure as to the specific event for which a Defendant failed to comply with such notice requirement.

39.    **Sierra Club and NPCA Response.**   Plaintiffs shall notify Defendants in writing of their response regarding any claim of Force Majeure as soon as reasonably practicable.   If Plaintiffs agree that a delay in performance has been or will be caused by a Force Majeure Event, the Parties shall stipulate to an extension of deadline(s) for performance of the affected compliance requirement(s) by a period equal to the agreed delay actually caused by the event, in which case the delay at issue shall be deemed not to be a violation of the affected requirement(s) of this Agreement.   In such circumstances, an appropriate modification shall be made pursuant to Paragraph 43 (Modification) of this Agreement.

40.    **Disagreement.**   If Plaintiffs do not agree with any Defendant's claim of Force Majeure, or if the Parties cannot agree on the length of the delay actually caused by the Force Majeure Event, the matter shall be resolved in accordance with Paragraphs 29-35 of the Agreement (Dispute Resolution).

41.    **Burden of Proof.**   In any dispute regarding Force Majeure, Defendants shall bear the burden of proving by a preponderance of the evidence that any delay in performance, or any other violation of any requirement of this Agreement, was caused by or will be caused by a Force Majeure Event.   Defendants shall also bear the burden of

proving by a preponderance of the evidence that they gave the notice required by this Section and that the anticipated duration and extent of any failure, delay, or violation(s) were or will be attributable to a Force Majeure Event.   An extension of one compliance date may, but will not necessarily, result in an extension of a subsequent compliance date.

## COSTS OF LITIGATION

42.     Defendants agree that, pursuant to 42 U.S.C. § 7604(d), Plaintiffs are entitled to seek recovery of their costs of litigation in this action, including reasonable attorney and expert witness fees.   The Parties also agree that Plaintiffs, by accepting certain litigation costs and fees for work performed prior to the Date of Entry, are not precluded from requesting and being awarded litigation costs and fees pursuant to 42 U.S.C. § 7604(d) for work performed after the Date of Entry.

## MODIFICATION

43.     Material modifications of this Agreement must be in writing, signed by the Parties, and approved by this Court.   No Party may petition this Court for a modification without having first made a good-faith effort to reach agreement with the other Parties on the terms of such modification.   Non-material modifications to this Agreement may be made only upon written agreement of the Parties that shall be filed with the Court.

## RETENTION OF JURISDICTION

44.     Until termination of this Agreement, this Court shall retain jurisdiction over both the subject matter of this Agreement and the Parties to enforce the terms and conditions of this Agreement.   Following termination, the Court shall retain jurisdiction to enforce the provisions and obligations set forth herein that are permanent.

## TERMINATION

45.     Either Plaintiffs or Defendants may move the Court to terminate this Agreement once Defendants have complied with all requirements contained in Paragraphs 9 - 16 of the Agreement.   Defendants must demonstrate such compliance prior to, or upon, moving the Court to terminate this Agreement.

## LODGING AND ENTRY

46.     The Parties agree to cooperate in good faith in order to obtain the Court's review and entry of this Agreement.

47.     Pursuant to 42 U.S.C. § 7604(c)(3), this Agreement will be lodged with the Court and simultaneously presented to the United States Attorney General ("DOJ") and Administrator of EPA for review and comment for a period of 45 days.   In the event that DOJ or EPA comments upon the terms of this Agreement, the Parties agree to discuss such comments and any revisions of the Agreement as may be appropriate. After the review period has elapsed, the Agreement may be entered by the Court.   If

23

the Agreement is not entered by the Court, the Parties shall retain all rights they had in this litigation before the Date of Lodging.

## SIGNATORIES

48.     Each undersigned representative of a Party to this Agreement certifies that he or she is fully authorized to enter into the terms and conditions of this Agreement and to execute and legally bind such Party to this Agreement.

49.     The Parties hereby agree not to oppose entry of this Agreement by this Court or challenge any provision of this Agreement.

## COUNTERPARTS

50.     This Agreement may be signed in counterparts.

THE UNDERSIGNED Parties enter into this Agreement and submit it to this Court for approval and entry.

SO ORDERED THIS ___ DAY OF _____, 2018:


_____
UNITED STATES DISTRICT JUDGE

**Signature Page for Agreement in** *Sierra Club, et al. v. Entergy Arkansas, Inc., et al.* **(E.D. Ark)**

**For Plaintiff Sierra Club**:


_Kristin A. Henry_                        Date: _November 13, 2018_
[Signature]

_Kristin A. Henry, Managing Attorney_
[Name and Title]

**Signature Page for Agreement in *Sierra Club, et al. v. Entergy Arkansas, Inc., et al.* (E.D. Ark)**

**For Plaintiff National Parks Conservation Association:**

Date: 11·13·18

[Signature]

Stephanie Kodish, Senior Director + Counsel
[Name and Title]

**Signature Page for Agreement in** *Sierra Club, et al. v. Entergy Arkansas, Inc., et al.* **(E.D. Ark)**

**For Defendant Entergy Power, LLC:**


_____                    Date: ___11/15/2018___
[Signature]

GERALD A. SANCHEZ - VICE PRESIDENT
[Name and Title]

27

Signature Page for Agreement in *Sierra Club, et al. v. Entergy Arkansas, Inc., et al.* (E.D. Ark)

**For Defendant Entergy Mississippi, Inc.:**

[Signature]

Date: 11/15/18

Haley R. Fisackerly, President & CEO
[Name and Title]

28

Signature Page for Agreement in *Sierra Club, et al. v. Entergy Arkansas, Inc., et al.* (E.D. Ark)

**For Defendant Entergy Arkansas, Inc.:**

_Laura Landreaux_   Date: ___11/15/2018___
[Signature]

Laura Landreaux, President & CEO
[Name and Title]