**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 21 2018

JAMES W. McCORMACK, CLERK
.By:_____
                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SIERRA CLUB AND
NATIONAL PARKS CONSERVATION ASSOCIATION                    PLAINTIFFS

V.                        NO. 4:18-cv-00854-KGB

ENTERGY ARKANSAS, INC., ENTERGY
POWER, LLC, AND ENTERGY
MISSISSIPPI, INC.                                          DEFENDANTS

## MOTION TO INTERVENE

Comes the Arkansas Affordable Energy Coalition, ("the Coalition"), by and through its undersigned counsel and respectfully requests that this Court enter an order granting the Coalition intervention as of right as a party in this action pursuant to Fed.R.Civ.P. 24(a). In the alternative, the Coalition respectfully requests that the Court grant the Coalition permissive intervention pursuant to Fed. R. Civ. P. 24(b).  For its Motion, the Coalition states:

1.      On November 16, 2018, the Plaintiffs filed their complaint in this case against the Defendants pursuant to the citizens suit provision of the federal Clean Air Act, 42 U.S.C. §7604(a), alleging violations of the New Source Review and Title V provisions of the Clean Air Act in 2008 and 2009 at the Independence Steam Electric Station ("Independence") located in Newark, Arkansas, and in 2007 at the White Bluff Steam Electric Station ("White Bluff") located in Redfield, Arkansas.

2.      Shortly after the Complaint was filed, the Plaintiffs and Defendants filed notice of their Settlement Agreement seeking to have the Court enter a Consent Judgment (Docket Entry "DE" No. 11) which will require the Defendants to permanently cease the combustion of coal at

1

White Bluff and Independence by 2028 and 2030, respectively, before the end of the effective operating life of those plants.

3.  White Bluff and Independence were designed to burn coal as the fuel source for electric generation and have used coal as a fuel since they began operations.

4.  This lawsuit is the latest attempt by one or both of the Plaintiffs to force Defendants to either install expensive control technology at White Bluff and Independence, or to cease the combustion of coal at the two plants before the end of the effective operating life of those plants, either through switching fuel to natural gas or by early retirement of the plants.  The Coalition, or its members, have resisted these efforts by submitting comments and intervening in various regulatory proceedings and litigation dating back to 2009.[1]  The Coalition also has moved to intervene in a proceeding initiated by the Arkansas Attorney General before the Arkansas Public Service Commission to investigate the Settlement Agreement.  *In the Matter of an Application by the Office of Attorney General Leslie Rutledge for an Investigation into Entergy Arkansas LLC's Voluntary Settlement Agreement Affecting Electric Generating Plants*, Arkansas Public Service Commission Docket 18-079-U.  A copy of the Coalition's Petition to Intervene in that proceeding is attached hereto as Exhibit A.

---

[1] These proceedings include (a) the EPA Regional Haze Rule Arkansas State Implementation Plan docket, EPA-R06-OAR-2008-0727; (b) *In the Matter of Entergy Arkansas, Inc.'s Request for a Declaratory Order Approving the Addition of Environmental Controls at the White Bluff Steam Electric Station Near Redfield, Arkansas*, Arkansas Public Service Commission, Docket 09-024-U; (c) the EPA Arkansas Regional Haze Rule Federal Implementation Plan docket, EPA-R06-OAR-2015-0189; (d) the Sierra Club Regional Haze Rule Federal Implementation Plan citizens lawsuit, *Sierra Club v. McCarthy*, U.S.D.C., E.D. Ark., Docket No. 4-14-cv-00643; (e) the EPA Arkansas Regional Haze Rule FIP citizens lawsuit consent decree docket, EPA-HQ-OGC-2015-0162; (f) *Sierra Club v. Nucor Steel*, U.S. 8th Circuit Court of Appeals Docket No. 15-3363; (g) *Arkansas Affordable Energy Coalition v. EPA*, U. S. 8th Circuit Court of Appeals Docket No. 16-4296; (h) the Arkansas Department of Environmental Quality 2018 Revised Regional Haze Rule State Implementation Plan; and (i) Sierra Club's administrative appeal of the ADEQ 2018 Revised Regional Haze Rule SIP, Arkansas Pollution Control & Ecology Commission, Docket No. 18-002-MISC.

5.      The White Bluff and Independence plants are co-owned by several electric

utilities and municipal electric power providers that operate and serve customers located in the

State of Arkansas, i.e., Defendant Entergy Arkansas, Inc., now Entergy Arkansas, LLC ("EAL"),

Arkansas Electric Cooperative Corporation ("Arkansas Electric Cooperatives"), the City of

Jonesboro, the City of West Memphis, the City of Conway, and the City of Osceola.

6.      White Bluff and Independence provide baseload electric power for much of the

State of Arkansas.  In 2014, White Bluff and Independence constituted approximately 34% of the

electric generating capacity of Arkansas Electric Cooperatives, and supplied approximately 70%

of Arkansas Electric Cooperative's electricity requirements.  In 2017 White Bluff and

Independence constituted approximately 20% of EAL's owned, retail electric generating

capacity, and supplied approximately 25% of EAL's electricity requirements.

7.      Together, White Bluff and Independence provide 3300 MW of firm electric

generating capacity.  Replacing that firm capacity will cost at least $2.7 to $3 Billion, based on

current estimates.  Under Arkansas law, those costs and other costs resulting from the early

retirement or fuel conversion of White Bluff and Independence will be passed on directly to

Arkansas ratepayers, including members of the Coalition.  *See, e.g.*, Ark. Code Ann. §§ 23-4-

501, 504.

8.      The Coalition includes electric consumers, and associations of consumers, that

receive electric power from the White Bluff and Independence plants affected by the Complaint

and the Settlement Agreement.  For example, the steel mills of Coalition members Nucor Steel –

Arkansas, a division of Nucor Corporation ("NSAR") and Nucor-Yamato Steel Company

("NYS") are significant customers of and members in the Mississippi County Electric

Cooperative, Inc. ("MCECI").  MCECI is a member of Arkansas Electric Cooperatives, which is

3

a co-owner of the White Bluff and Independence plants.  Much of the electricity purchased by

NSAR and NYS's mills comes from these power plants.  The Coalition's membership also

includes Arkansas Electric Energy Consumers, Inc., whose members are large, industrial

customers of EAL.  The Coalition's electric consumers would be harmed if the White Bluff and

Independence plants are forced to cease operations or convert to another fuel source before the

end of their effective operating life because electric service would become more expensive and

less reliable.

   9.  The Settlement Agreement would also reduce the demand for coal, and likely

would increase the demand for natural gas, since natural gas currently is the least cost fuel to

replace the firm generation capacity of White Bluff and Independence.  The Coalition's members

also include the Energy Policy Network ("EPN"), a non-profit, incorporated trade organization

representing the interest of low-sulfur coal from the Powder River Basin of Wyoming.  EPN's

primary mission is to educate and advocate for the continued use of low-sulfur coal in electric

power plants.  Since the obligations contained in the Settlement Agreement would reduce the

demand for low-sulfur coal from the Powder River Basin of Wyoming, EPN has an interest in

the outcome of this action, and would be harmed if White Bluff and Independence were to curtail

operations prior to the end of their effective operating life, or switch to another fuel source

because the demand for coal would decrease.

   10.  The Coalition's members also include Arkansas Natural Gas Consumers, Inc.,

whose members are large, industrial consumers of natural gas in Arkansas.  These consumers

would be harmed if White Bluff and Independence switched their fuel source to natural gas,

because that would cause an increase in demand for natural gas and natural gas transmission

capacity in the state, putting upward pressure on natural gas prices and transmission costs to deliver natural gas.

11.     The Settlement Agreement will result in significant economic harm to the members of the Coalition for the reasons stated above.  The purpose of the Coalition is to advocate for and take action to ensure an affordable and reliable energy supply in the State of Arkansas.  As a result, the Coalition and its members have a direct interest in the outcome of this lawsuit, including the Settlement Agreement.  Disposition of this action and approval of the Settlement Agreement will, as a practical matter, impair or impede the Coalition's members' ability to protect their interests in maintaining reasonable electric rates and reliable electric service.  Disposition of this action will also impede the Coalition's members' ability to protect their interest in promoting and maintaining the market for the use of low-sulfur coal from Wyoming.  Disposition of this action also will impede the Coalition's members' interest in maintaining low costs and rates for natural gas service.

12.     The only parties to this action are the Sierra Club and National Parks Conservation Association, which is bringing this action to force the Defendants to enter into the Settlement Agreement, and the Entergy Defendants, which have agreed to the Settlement.  There currently are no other parties that oppose the Settlement Agreement or the allegations in the Complaint.  Consequently, there is no existing party that can adequately represent the Coalition's interests.  As a result, the Coalition is entitled to intervention as of right, pursuant to Fed.R.Civ.P. 24(a)(2).

13.     In addition, the Coalition has claims or defenses that share common questions of law or fact with the main action, including but not limited to, whether this Court has subject matter jurisdiction over Plaintiffs claims, whether the Plaintiffs have standing, whether the Defendants have the authority to enter into the Settlement Agreement with the Plaintiffs without approval of

other regulatory authorities, whether the Settlement Agreement is in the best interest of the Coalition members who obtain electric power from the White Bluff and Independence plants, and whether the Plaintiffs have a proper factual or legal basis for the claims asserted in the Complaint. As a result, the Coalition should be allowed permission to intervene pursuant to Fed.R.Civ.P. 24(b)(1)(B).

14.     Intervention by the Coalition will not unduly prejudice or delay the adjudication of the parties' rights. The Coalition has quickly moved to file its Motion to Intervene, just a few weeks after the initial filing of the Complaint and before the time has expired for comments by the federal government, as provided in 42 U.S.C. §7604(c). The existing parties are not harmed by the Coalition's intervention. Given the contemporaneous filing of the Complaint and Settlement Agreement, neither party has expended significant resources in discovery or any pre-trial matters. Intervention simply allows the Coalition and its members to protect their interests.

15.     The Coalition and its members also have standing in this case. As discussed above, as electric service customers of the Entergy Defendants and of the other co-owners of the White Bluff and Independence plants, as members of the electric cooperatives that have an indirect ownership interest in the plants, as promoters of the use of low-sulfur Wyoming coal at the two plants, and as natural gas consumers that would be adversely affected by the increased demand for natural gas and natural gas transmission in the State of Arkansas, the Coalition and its members have a legally protected interest in the subject matter of the litigation. If the Court were to grant the relief sought by Plaintiffs, and/or approve the settlement agreement between Plaintiff and Defendants requiring the premature cessation of the use of coal at the two plants, the Coalition and its members will suffer significant injury through unnecessary increased electric costs and decreased reliability, unnecessary increased natural gas costs and decreased reliability, and

decreased demand for coal. At the same time, the Coalition and its members would be unable to litigate the issues involved in this case before the state regulatory authorities that are properly charged with administering the Clean Air Act in Arkansas, i.e., the Arkansas Department of Environmental Quality, and with regulating electric utility assets located in the state, electric utility resource planning, and electric utility rates and charges, i.e., the Arkansas Public Service Commission. These concrete and particularized injuries would be directly traceable to Plaintiffs' complaint herein and the Settlement Agreement between Plaintiffs and Defendants for which this Court's approval is sought. These injuries could be favorably redressed by the Court's dismissal of Plaintiffs' complaint, or denial of approval of the Settlement Agreement between the Plaintiffs and Defendants, or both. Accordingly, the Coalition has standing to intervene in this case.

16.     Attached hereto as Exhibit B is the Coalition's proposed pleading setting out the claim or defense for which intervention is sought.

WHEREFORE, the Arkansas Affordable Energy Coalition prays that the Court grant its motion to intervene.

Respectfully submitted

JACKSON WALKER L.L.P.
100 Congress, Suite 1100
Austin, TX 78701
512/ 236-2000
512/ 236-2002 – Fax

Mark Walters
mwalters@jw.com
(pro hac vice motion to be filed)
Michael Nasi
mnasi@jw.com
(pro hac vice motion to be filed)

Mark H. Allison
Ark. Bar No. 85001
mallison@ddh.law

Randall L. Bynum
Ark. Bar No. 89194
rbynum@ddh.law
DOVER DIXON HORNE PLLC
Suite 3700
425 West Capitol Avenue
Little Rock, AR 72201
(501) 375-9151
(501) 375-6484


ATTORNEYS FOR ARKANSAS
AFFORDABLE ENERGY
COALITION


By:_____


## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2018, I filed the foregoing with the Clerk of the
Court, which shall send notification of such filing using the CM/ECF system to persons
registered to receive such notice, and that a true and correct copy of the foregoing was sent by
U.S. mail, first class postage prepaid, to the following:


Richard H. Mays, Esq.
WILLIAMS & ANDERSON PLC
111 Center Street, Suite 2200
Little Rock, AR 72201
rmays@williamsanderson.com

George E. Hays, Esq.
P. O. Box 843
Bellevue, WA 98009
georgehays@mindspring.com

Naomi Kim Melver
P. O. Box 25
Greenbank, WA 98253
nmelver@gmail.com

John Peiserich, Esq.
G. Alan Perkins, Esq.
Micah L. Goodwin, Esq.
PPGMR Law, PLLC
101 Morgan Keegan Drive, Suite A
Little Rock, AR  72202
john@ppgmrlaw.com
alan@ppgmrlaw.com
micah@ppgmrlaw.com

Timothy K. Webster, Esq.
Sidley Austin L.L.P.
1501 K Street, N.W.
Washington, DC 20005
twebster@sidley.com

Debra J. Jezouit, Esq.
Baker Botts L.L.P.
1299 Pennsylvania Ave. N.W.
Washington, DC  20004
Debra.jezouit@bakerbotts.com

Kimberley Bennett, Esq.
Energy Services, LLC
425 West Capitol Avenue
Suite 28E
Little Rock, Arkansas 72201
Kbenne3@entergy.com

Susan Margaret Floyd, Esq
Entergy Services, LLC
639 Loyola Avenue, 22nd Floor
New Orleans, LA 70113
sfloyd@entergy.com

Sarah Tacker, Esq.
Senior Assistant Attorney General
Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
Sarah.Tacker@ArkansasAG.gov

_Mark H. Allison_

EXHIBIT A

COALITION'S APSC PETITION TO INTERVENE

APSC FILED Time: 12/21/2018 11:34:51 AM: Recvd 12/21/2018 11:34:17 AM: Docket 18-079-U-Doc. 3

**BEFORE THE**
**ARKANSAS PUBLIC SERVICE COMMISSION**

| | | |
|---|---|---|
| IN THE MATTER OF AN APPLICATION BY THE | ) | |
| OFFICE OF ARKANSAS ATTORNEY GENERAL | ) | |
| LESLIE RUTLEDGE FOR AN INVESTIGATION | ) | |
| INTO ENTERGY ARKANSAS, LLC'S VOLUNTARY | ) | **DOCKET NO. 18-079-U** |
| SETTLEMENT AGREEMENT AFFECTING | ) | |
| ELECTRIC GENERATING PLANTS | ) | |

**PETITION TO INTERVENE**
**BY THE ARKANSAS AFFORDABLE ENERGY COALITION**

The Arkansas Affordable Energy Coalition (hereinafter "the Coalition"), by and through its undersigned attorneys, hereby petitions the Arkansas Public Service Commission (hereinafter "APSC" or "Commission") for leave to intervene in the above-captioned regulatory proceeding pursuant to Rule 4.02 of the APSC's Rules of Practice and Procedure. The Coalition states the following in support of its Petition to Intervene:

1.      APSC Rule of Practice and Procedure 4.02(a) states the following: "Any Person whose interest may be directly affected by Commission action and whose interest is not adequately represented by other Parties may petition the Commission for leave to intervene as a Party in any Docket."

2.      The Coalition is an informal association of entities with shared interests that originally coalesced to jointly seek federal appellate review of the Federal Implementation Plan (hereinafter "FIP") for the Regional Haze Rule (hereinafter "RHR") promulgated by the Environmental Protection Agency (hereinafter "EPA") in or about September 2016, because said RHR FIP and the regulatory requirements contained therein implicated the interests of the Coalition's members. Subsequently, the Coalition filed a Petition for Review regarding the RHR FIP in Case No. 16-4296, which remains pending (along with similar, consolidated cases) before

1

**EXHIBIT A**

APSC FILED Time: 12/21/2018 11:34:51 AM: Recvd 12/21/2018 11:34:17 AM: Docket 18-079-U-Doc. 3

the Eighth Circuit Court of Appeals.[1]  Other litigants involved in the RHR FIP litigation at the Eighth Circuit include the Arkansas Attorney General (hereinafter "the AG"), the applicant that initiated the instant regulatory proceeding, as well as the National Parks Conservation Association (hereinafter "NPCA"), Sierra Club (hereinafter "Sierra"), and Entergy Arkansas, LLC (hereinafter "EAL" ), the parties entering into the Settlement Agreement that the AG asks this Commission to investigate in the instant regulatory proceeding.

3.      On November 16, 2018, Sierra and NPCA filed a complaint in the United States District Court for the Eastern District of Arkansas[2] against EAL and other co-defendants pursuant to the citizens suit provision of the federal Clean Air Act, 42 U.S.C. §7604(a); said complaint alleges violations of the New Source Review and Title V provisions of the Clean Air Act in 2008 and 2009 at the Independence Steam Electric Station ("Independence") located in Newark, Arkansas, and in 2007 at the White Bluff Steam Electric Station ("White Bluff") located in Redfield, Arkansas.

4.      Shortly after Sierra and NPCA filed the complaint, the parties filed notice of a Settlement Agreement seeking the federal court's entry of a Consent Judgment which will require EAL and its co-defendants to permanently cease the combustion of coal at White Bluff and Independence by 2028 and 2030, respectively, well before the end of the effective operating life of those power plants.

---

[1] Notably, the Eighth Circuit has held the RHR FIP litigation in abeyance and stayed the requirements of the RHR FIP in order to provide the Arkansas Department of Environmental Quality (hereinafter "ADEQ") with time to obtain EPA approval of revised State Implementation Plans (hereinafter "SIPs") for the RHR.  The Coalition anticipates that the RHR FIP litigation will become moot upon EPA's approval of the revised SIPs.

[2] The citizens suit complaint filed by Sierra and NPCA remains pending in the US District Court for the Eastern District of Arkansas in Case No. 4:18-cv-00854-KGB.

EXHIBIT A

APSC FILED Time:  12/21/2018 11:34:51 AM: Recvd  12/21/2018 11:34:17 AM: Docket 18-079-U-Doc. 3

5.      The recent citizens suit constitutes the latest attempt[3] by Sierra or NPCA to force EAL and its co-defendants to either install expensive control technology at White Bluff and Independence, or to cease the combustion of coal at the two plants before the end of the effective operating life of those plants, either through switching fuel to natural gas or by early retirement of the plants. The Coalition and/or its members have resisted all of these efforts by either submitting comments[4] and/or intervening in various regulatory proceedings and litigation dating back to 2009.[5]

6.      As noted, the Coalition recently intervened in Docket No. 18-002-MISC before the Arkansas Pollution Control and Ecology Commission (hereinafter "PC&E Commission"). In that docket, Sierra asks the PC&E Commission to review the revised RHR SIPs for which ADEQ currently seeks EPA approval.

---

[3] Notably, the RHR FIP promulgated by the EPA in or about September 2016 resulted from a prior citizens suit Sierra filed against the EPA. That citizens suit was adjudicated in the US District Court for the Eastern District of Arkansas in Case No. 4:14-cv-00643-JLH.

[4] One member of the Coalition has submitted comments criticizing an anticipated decision to retire coal-fired plants early in both of the stakeholder reports attached to EAL's two most recent Integrated Resource Plans filed in 2015 and 2018, respectively, in APSC Docket No. 07-016-U.

[5] These proceedings include the following: (a) the EPA Regional Haze Rule Arkansas State Implementation Plan docket, EPA-R06-OAR-2008-0727; (b) *In the Matter of Energy Arkansas, Inc.'s Request for a Declaratory Order Approving the Addition of Environmental Controls at the White Bluff Steam Electric Station Near Redfield, Arkansas*, Arkansas Public Service Commission, Docket 09-024-U; (c) the EPA Arkansas Regional Haze Rule Federal Implementation Plan docket, EPA-R06-OAR-2015-0189; (d) the Sierra Club Regional Haze Rule Federal Implementation Plan citizens lawsuit, *Sierra Club v. McCarthy*, U.S.D.C., E.D. Ark., Docket No. 4-14-cv-00643; (e) the EPA Arkansas Regional Haze Rule FIP citizens lawsuit consent decree docket, EPA-HQ-OGC-2015-0162; (f) *Sierra Club v. Nucor Steel*, U.S. 8th Circuit Court of Appeals Docket No. 15-3363; (g) *Arkansas Affordable Energy Coalition v. EPA*, U. S. 8th Circuit Court of Appeals Docket No. 16-4296; (h) the Arkansas Department of Environmental Quality 2018 Revised Regional Haze Rule State Implementation Plan; and (i) Sierra Club's administrative appeal of the ADEQ 2018 Revised Regional Haze Rule SIP, Arkansas Pollution Control & Ecology Commission, Docket No. 18-002-MISC.

EXHIBIT A

APSC FILED Time: 12/21/2018 11:34:51 AM: Recvd 12/21/2018 11:34:17 AM: Docket 18-079-U-Doc. 3

7.     The Coalition's members include i) Nucor Steel – Arkansas, a division of Nucor Corporation (hereinafter "NSAR") and Nucor-Yamato Steel Company (hereinafter "NYS"), ii) Arkansas Electric Energy Consumers, Inc. (hereinafter "AEEC"), iii) Arkansas Gas Consumers, Inc. (hereinafter "AGC"), and iv) the Energy Policy Network (hereinafter "EPN").

8.     Two of the Coalition's four members are electric consumers, or associations of consumers, that receive electric power from the White Bluff and Independence plants affected by the Settlement Agreement into which the AG seeks an inquiry in this matter.  For example, NSAR and NYS are significant customers of and members in the Mississippi County Electric Cooperative, Inc. ("MCECI").  MCECI is a member of Arkansas Electric Cooperatives, which is a co-owner of the White Bluff and Independence plants.  Much of the electricity purchased by NSAR and NYS comes from these power plants.

9.     AEEC is a non-profit, incorporated trade association organized and existing under the laws of the State of Arkansas.  AEEC's members[6] are large industrial and agricultural organizations operating in Arkansas that purchase electricity from EAL under that utility's currently effective rate schedules.  The APSC has previously allowed AEEC to intervene and advocate on behalf of its members in numerous proceedings before it, including Docket No. 16-036-FR, in which the Commission adjudicates EAL's annual formula rate plan filings.  AEEC has also intervened in numerous other regulatory proceedings related to EAL, its rates, and its resource planning.

10.     The terms of the Settlement Agreement into which the AG seeks an inquiry could harm the Coalition's electric consumer members; if the White Bluff and Independence plants are forced to cease operations or convert to another fuel source before the end of their effective

---

[6] Exhibit A to this Petition identifies the members of AEEC for purposes of this proceeding.

4

EXHIBIT A

operating lives, the electric service provided to NSAR and NYS and AEEC's members by MCECI and EAL would become more expensive and less reliable. Upon information and belief, initial analyses conducted by AEEC's regulatory consultants suggest that the obligations contained in the Settlement Agreement will result in significant rate increases for all of EAL's ratepayers.

11.     The EPN is a non-profit, incorporated trade organization representing the interest of low-sulfur coal from the Powder River Basin of Wyoming. EPN's primary mission is to educate and advocate for the continued use of low-sulfur coal in electric power plants. Since the obligations contained in the Settlement Agreement would reduce the demand for low-sulfur coal from the Powder River Basin of Wyoming, EPN has an interest in the outcome of the instant regulatory proceeding.

12.     Further, the obligations contained in the Settlement Agreement would likely increase the demand for natural gas, since natural gas is currently the least cost fuel to replace the firm generation capacity of White Bluff and Independence. Therefore, AGC is also a member of the Coalition. AGC is a non-profit, incorporated trade association organized and existing under the laws of the State of Arkansas. AGC's members[7] are large industrial and agricultural organizations operating in Arkansas that purchase significant quantities of natural gas.

13.     AGC members may be harmed if White Bluff and Independence switched their fuel source to natural gas, or if the owners of those plants replace the capacity with additional gas-fired electric generating units, because that would increase demand for natural gas[8] and

---

[7] Exhibit B to this Petition identifies the members of AGC for purposes of this proceeding.

[8] Notably, the U.S. Energy Information Administration has noted that emphasizing natural gas as a fuel source for electricity generation injects additional volatility into natural gas prices because of fundamental economic realities concerning supply and demand. It states: "Because there are

5

EXHIBIT A

potentially constrain natural gas transmission capacity in the state, thereby putting upward pressure on natural gas prices and transmission costs to deliver natural gas.

14.     The Settlement Agreement into which the AG seeks an inquiry will result in significant economic harm to the members of the Coalition, for the reasons stated above. The purpose of the Coalition is to advocate and take action to ensure an affordable and reliable energy supply in the State of Arkansas. As a result, the Coalition and its members have a direct interest in the outcome of this regulatory proceeding, should the Commission agree to conduct an inquiry regarding the Settlement Agreement herein.

15.     No other party to this proceeding will adequately represent the interests of the Coalition and its members. At this time, the Coalition expects EAL, the APSC General Staff (hereinafter "Staff"), and the AG to participate in this proceeding. Each of these parties has interests that differ significantly from the interests of the Coalition and its members. None of these parties exclusively support the interests of large electricity and natural gas users with regard to the issues raised by the Settlement Agreement. Nor do these parties support the interests advanced by EPN. In fact, the AG and Staff have historically taken positions adverse to the interests of large electricity and natural gas users. Furthermore, based on the participation of the Coalition or its members in other proceedings and litigation involving the White Bluff and Independence plants, it is clear that the anticipated parties to this docket will not protect the interests of the Coalition and its members. Therefore, no other party to this proceeding will adequately represent the interests of the Coalition and its members.

---

limited short-term alternatives to natural gas as a fuel for heating and electricity generation during peak demand periods, *changes in supply or demand over a short period may result in large price changes*." U.S. Energy Information Administration, "What are the major factors affecting natural gas prices?" https://www.eia.gov/tools/faqs/faq.php?id=43&t=8 (emphasis added).

6

EXHIBIT A

APSC FILED Time: 12/21/2018 11:34:51 AM: Recvd 12/21/2018 11:34:17 AM: Docket 18-079-U-Doc. 3

16.     Since the Coalition and its members have an interest that will be directly affected by the APSC's action in this docket and no other party to this proceeding will adequately represent the interests of the Coalition and its members, the Coalition meets the requirements for intervention established by Rule 4.02(a).

17.     The Coalition cannot articulate specific objections to the AG's application at this time, because the Coalition supports the investigation sought by the AG herein and would like to participate in that investigation. Of course, if the APSC allows the Coalition to intervene herein, the Coalition intends to advocate the interests of its members with regard to the impacts of the Settlement Agreement at issue. Specifically, the Coalition intends to identify and retain expert witnesses who can assist with an investigation into the prudence, necessity, and reasonableness of the Settlement Agreement, and opine regarding whether or not the Settlement Agreement serves the public interest.

18.     This Petition is timely filed pursuant to the requirements contained in Rule 4.02(a)(2)(A), insofar as the AG filed its Application on December 13, 2018.

19.     Should the Commission grant this Petition to Intervene, the Coalition respectfully requests that the Commission add the following persons to the official service list for this Docket:

Mark Walters, Esq.                          Randall L. Bynum, Esq.
JACKSON WALKER L.L.P.               DOVER DIXON HORNE, PLLC
100 Congress, Suite 1100                425 West Capitol Avenue, Suite 3700
Austin, TX 78701                            Little Rock, AR 72201
(512) 236-2000                               (501) 978-9912
(512) 236-2002 (Fax)                      (501) 375-6484 (Fax)
mwalters@jw.com                           rbynum@ddh.law

EXHIBIT A

APSC FILED Time: 12/21/2018 11:34:51 AM: Recvd 12/21/2018 11:34:17 AM: Docket 18-079-U-Doc. 3

WHEREFORE, the Arkansas Affordable Energy Coalition hereby requests that the Arkansas Public Service Commission grant this Petition to Intervene, allow it to intervene and advocate on behalf of its members in this docket, and for any and all other relief to which the foregoing entitles it, or which justice and equity may require.

Respectfully submitted,

Mark Walters
Texas Bar No. 0078861
JACKSON WALKER L.L.P.
100 Congress, Suite 1100
Austin, TX 78701
512/ 236-2000
512/ 236-2002 (Fax)
mwalters@jw.com
/s/ Mark Walters

Randall L. Bynum
Ark. Bar No. 89194
Mark Allison
Ark. Bar No. 85001
DOVER DIXON HORNE PLLC
Suite 3700
425 West Capitol Avenue
Little Rock, AR 72201
Office: (501) 375-9151
Fax: (501) 375-6484
rbynum@ddh.law
mallison@ddh.law
/s/ Randall L. Bynum

Jordan B. Tinsley
Ark. Bar No. 2008270
Tinsley & Youngdahl, PLLC
813 West Third Street
Little Rock, AR 72201
Office: (501) 374-2099
Fax: (501) 374-2098
jordan@TYattorney.com
/s/ Jordan B. Tinsley

ATTORNEYS FOR ARKANSAS
AFFORDABLE ENERGY
COALITION

8

EXHIBIT A

APSC FILED Time:  12/21/2018 11:34:51 AM: Recvd  12/21/2018 11:34:17 AM: Docket 18-079-U-Doc. 3

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been delivered on all parties of record by electronic mail via the APSC's Electronic Filing System this 21st day of December 2018.

/s/ *Jordan B. Tinsley*
Jordan B. Tinsley                ABN 2008270

9

**EXHIBIT A**

APSC FILED Time:  12/21/2018 11:34:51 AM: Recvd  12/21/2018 11:34:17 AM: Docket 18-079-U-Doc. 3

## EXHIBIT A

1)  Acme Brick

2)  Arkansas Steel Associates

3)  Commercial Metals Companies

4)  Delek Holdings (Lion Oil)

5)  Gerdau

6)  Lanxess

7)  Martin Operating Partnership, LP

8)  Producers Rice Mill

9)  Riceland Foods, Inc.

10) Weyerhaeuser NR Company

10

EXHIBIT A

APSC FILED Time: 12/21/2018 11:34:51 AM: Recvd 12/21/2018 11:34:17 AM: Docket 18-079-U-Doc. 3

## **EXHIBIT B**

1) Acme Brick

2) Arkansas Lime

3) Arkansas Steel Associates

4) Commercial Metals Companies

5) Delek Holdings (Lion Oil)

6) GEO Specialty Chemicals

7) Gerdau

8) Producers Rice Mill

9) Riceland Foods

11

EXHIBIT A

EXHIBIT B

COALITION'S PROPOSED ANSWER

Mark Walters (State Bar No. 00788611)
Michael Nasi (State Bar No. 00791335)
JACKSON WALKER LLP
100 Congress Ave., Suite 1100
Austin, Texas 78701
Telephone: (512) 236-2000
Email: mwalters@jw.com
Email: mnasi@jw.com

Mark H. Allison (Ark. Bar No. 85001)
Randall L. Bynum (Ark. Bar No. 89194)
DOVER DIXON HORNE PLLC
Suite 3700
425 West Capitol Avenue
Little Rock, AR 72201
(501) 375-9151
Email: mallison@ddh.law
Email: rbynum@ddh.law

Counsel for Intervenor

UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| SIERRA CLUB and NATIONAL PARKS CONSERVATION ASSOCIATION, <br><br> Plaintiff, <br><br> v. <br><br> ENTERGY ARKANSAS, INC., ENTERGY POWER, LLC, and ENTERGY MISSISSIPPI, INC. <br><br> Defendants. | § § § § § § § § § § § § | Civil Action No. 4:18-CV-854-KGB |

**ORIGINAL ANSWER TO COMPLAINT**

Intervenor the Arkansas Affordable Energy Coalition ("the Coalition") files this original

answer to plaintiffs' original complaint (Complaint) and would respectfully show as follows:

1

EXHIBIT B

**First Defense**

**INTRODUCTION**

1.      The allegations and averments of paragraph 1 of plaintiffs' Complaint do not require an admission or denial by the Coalition.

**JURISDICTION AND VENUE**

2.      The Coalition admits that paragraph 2 of the Complaint cites jurisdictional statutes of the United States Code and the Clean Air Act.  The Coalition denies that plaintiffs are entitled to any relief.  The Coalition lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and averments of paragraph 2 of the Complaint.  The Coalition lacks knowledge or information sufficient to form a belief about whether this Court has jurisdiction over plaintiffs' claims.

3.      The allegations and averments of paragraph 3 of the Complaint do not require an admission or denial by the Coalition.

4.      The Coalition lacks knowledge or information sufficient to form a belief about the truth of the allegations and averments of paragraph 4 of the Complaint.

5.      The Coalition admits that if this Court has jurisdiction of this case then venue is proper in this District.

**PARTIES**

6.      The Coalition lacks knowledge or information sufficient to form a belief about the truth of the allegations and averments in paragraphs 6-9 of the Complaint.

7.      The Coalition lacks knowledge or information sufficient to form a belief about the truth of the allegations and averments in paragraphs 10-15 of the Complaint.

2

EXHIBIT B

## PLAINTIFFS' INJURIES

8.     The Coalition admits the allegations and averments of paragraphs 16-18 of the Complaint on information and belief.

9.     The Coalition admits that the second sentence of paragraph 19 of the Compliant refers to 40 C.F.R. § 52.21(b)(1)(i), which speaks for itself.  The Coalition is otherwise without knowledge or information sufficient to form a belief about the truth of the remaining allegations and averments of paragraph 19 of the Complaint.

10.    Paragraph 20-22 of the Complaint make general allegations about the possible effects of sulfur dioxide ($SO_2$) and oxides of nitrogen ($NO_x$) without reference to the two plants at issue in this case—White Bluff and Independence.  These allegations and averments do not require a response by the Coalition.

11.    The Coalition admits that paragraphs 23-25 of the Complaint refer to declarations attached to the Complaint, which speak for themselves.  The Coalition is otherwise without knowledge or information sufficient to form a belief about the truth of the remaining allegations and averments of paragraphs 23-25 of the Complaint.  The Coalition further denies that plaintiffs are entitled to any of the relief requested.

## LEGAL BACKGROUND

12.    Paragraph 26 of the Complaint quotes Clean Air Act § 101(b)(1), which speaks for itself, without reference to the White Bluff or Independence plants.  The allegations and averments of paragraph 26 of the Complaint do not require an admission or denial by the Coalition.

3

EXHIBIT B

*The National Ambient Air Quality Standards*

13.     Paragraph 27 of the Complaint refers to Clean Air Act §§ 108-109, which speak for themselves, without reference to the White Bluff or Independence plants. The allegations and averments of paragraph 27 of the Complaint do not require an admission or denial by the Coalition.

14.     Paragraph 28 of the Complaint refers to Clean Air Act §§ 108-109 and certain sections of the Code of Federal Regulations, which speak for themselves, without reference to the White Bluff or Independence plants. The allegations and averments of paragraph 28 of the Complaint do not require an admission or denial by the Coalition.

15.     Paragraph 29 of the Complaint refers to Clean Air Act § 107, which speaks for itself, without reference to the White Bluff or Independence plants. The allegations and averments of paragraph 29 of the Complaint do not require an admission or denial by the Coalition.

16.     AAEC admits the allegations and averments of paragraphs 30-31 of the Complaint on information and belief.

*Prevention of Significant Deterioration*

17.     Paragraphs 32-38 of the Complaint refer to certain provisions of the Clean Air Act, which speak for themselves, without reference to the White Bluff or Independence plants. The allegations and averments of paragraphs 32-38 of the Complaint do not require an admission or denial by the Coalition.

18.     Paragraphs 39-40 of the Complaint refer to certain provisions of the Clean Air Act and certain sections of the Code of Federal Regulations, which speak for themselves, without reference to the White Bluff or Independence plants. The allegations and averments of paragraphs 39-40 of the Complaint do not require an admission or denial by the Coalition.

4

**EXHIBIT B**

*The Title V Operating Permit Program*

19.    Paragraph 41 of the Complaint refers to certain provisions of the Clean Air Act, which speak for themselves, without reference to the White Bluff or Independence plants. The allegations and averments of paragraph 41 of the Complaint do not require an admission or denial by the Coalition.

20.    Paragraph 42 of the Complaint refers to certain provisions of the Clean Air Act and certain sections of the Code of Federal Regulations and the Federal Register, which speak for themselves, without reference to the White Bluff or Independence plants. The allegations and averments of paragraph 42 of the Complaint do not require an admission or denial by the Coalition.

*The State of Arkansas' PSD and Title V Programs*

21.    Paragraphs 43-54 of the Complaint refer to certain provisions of the Clean Air Act, certain sections of the Code of Federal Regulations, certain sections of the Arkansas PSD Program (as contained in Arkansas's State Implementation Plan) and/or certain sections of the Federal Register, all of which speak for themselves, without reference to the White Bluff or Independence plants. The allegations and averments of paragraphs 43-54 of the Complaint do not require an admission or denial by the Coalition.

*Enforcement Provisions*

22.    Paragraphs 55-59 of the Complaint refer to certain provisions of the Clean Air Act, which speak for themselves, without reference to the White Bluff or Independence plants. The allegations and averments of paragraphs 55-59 of the Complaint do not require an admission or denial by the Coalition.

23.    Paragraph 60 of the Complaint refers to certain sections of the Code of Federal Regulations, which speak for themselves, without reference to the White Bluff or Independence

5

EXHIBIT B

plants. AAEC denies that plaintiffs are entitled to any of the relief requested. The remaining allegations and averments of paragraph 60 of the Complaint do not require an admission or denial by the Coalition.

24. Paragraph 61 of the Complaint refer to certain provisions of the Clean Air Act, which speak for themselves, without reference to the White Bluff or Independence plants. AAEC denies that plaintiffs are entitled to any of the relief requested. The allegations and averments of paragraphs 61 of the Complaint do not require an admission or denial by the Coalition.

## FACTUAL BACKGROUND

25. The Coalition is without knowledge or information sufficient to form a belief about the truth of the allegations and averments of paragraphs 62-80 of the Complaint.

## CLAIMS FOR RELIEF

### Plaintiffs' First Claim for Relief

### Modifying and Operating the Independence Plant Without Obtaining a PSD Permit for a Major Modification at Unit 1.

26. The Coalition realleges all preceding paragraphs as if set forth in full.

27. The Coalition is without knowledge or information sufficient to form a belief about the truth of the allegations and averments of paragraphs 82-84 of the Complaint.

### Plaintiffs' Second Claim for Relief

### Modifying and Operating the Independence Plant Without a Modified Part 70 Permit.

28. The Coalition realleges all preceding paragraphs as if set forth in full.

29. The Coalition is without knowledge or information sufficient to form a belief about the truth of the allegations and averments of paragraphs 86-88 of the Complaint.

6

EXHIBIT B

### Plaintiffs' Third Claim for Relief

**Modifying and Operating the Independence Plant Without Obtaining a PSD Permit for a Major Modification at Unit 2.**

30.   The Coalition realleges all preceding paragraphs as if set forth in full.

31.   The Coalition is without knowledge or information sufficient to form a belief about the truth of the allegations and averments of paragraphs 90-92 of the Complaint.

### Plaintiffs' Fourth Claim for Relief

**Modifying and Operating the Independence Plant Without Obtaining a Modified Part 70 Permit.**

32.   The Coalition realleges all preceding paragraphs as if set forth in full.

33.   The Coalition is without knowledge or information sufficient to form a belief about the truth of the allegations and averments of paragraphs 94-96 of the Complaint.

### Plaintiffs' Fifth Claim for Relief

**Modifying and Operating the White Bluff Plant Without Obtaining a PSD Permit for a Major Modification at Unit 2.**

34.   The Coalition realleges all preceding paragraphs as if set forth in full.

35.   The Coalition is without knowledge or information sufficient to form a belief about the truth of the allegations and averments of paragraphs 98-100 of the Complaint.

### Plaintiffs' Sixth Claim for Relief

**Modifying and Operating the White Bluff Plant Without Obtaining a Modified Title V Permit.**

36.   The Coalition realleges all preceding paragraphs as if set forth in full.

37.   The Coalition is without knowledge or information sufficient to form a belief about the truth of the allegations and averments of paragraphs 102-104 of the Complaint.

7

EXHIBIT B

### REQUEST FOR RELIEF

38.     The Coalition is without knowledge or information sufficient to form a belief about the truth of the allegations and averments of paragraphs 105-113 of the Complaint

### Second Defense

39.     The Complaint fails to state a claim upon which relief can be granted.

### Third Defense

40.     All plaintiffs' claims are barred by the applicable statute of limitations.

### Fourth Defense

41.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

### Fifth Defense

42.     Plaintiffs' claims are barred, in whole or in part, for failure to exhaust administrative remedies.

Wherefore, Intervenor the Arkansas Affordable Energy Coalition respectfully requests that upon final trial plaintiffs take nothing on each of their claims, that the Coalition recover its attorneys' fees and costs, to the extent permitted by law, and that the Coalition be awarded such other and further relief, at law or in equity, as it may show itself to be justly entitled.

8

EXHIBIT B

Respectfully submitted,

/s/
_____

Mark Walters– 00788611
Mike Nasi – 00791335
JACKSON WALKER L.L.P.
100 Congress Avenue, Suite 1100
Austin, Texas 78701
Telephone: 512-236-2000
Fax No. 512-236-2002
mwalters@jw.com
mnasi@jw.com

/s/
_____

Mark H. Allison
Arkansas Bar No. 85001
Randall L. Bynum
Arkansas Bar No. 89194
DOVER DIXON HORNE PLLC
425 West Capitol Avenue
Suite 3700
Little Rock, Arkansas 72201
Telephone: 501-375-9151
Fax No. 501-375-6484
mallison@ddh.law
rbynum@ddh.law

ATTORNEYS FOR ARKANSAS
AFFORDABLE ENERGY COALITION

EXHIBIT B

## **CERTIFICATE OF SERVICE**

This is to certify that on the ___ day of _____, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice of such filing to all counsel of record.

_/s/_____
Mark Walters

10

**EXHIBIT B**