# IN THE UNITED STATE DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| **SIERRA CLUB and NATIONAL PARKS CONSERVATION ASSOCIATION** | | **PLAINTIFFS** |
| v. | Civil Action No. 4:18-cv-00854-KGB | |
| **ENTERGY ARKANSAS, INC., ENTERGY POWER, LLC, AND ENTERGY MISSISSIPPI, INC.** | | **DEFENDANTS** |

## RESPONSE BRIEF

COMES NOW, the State of Arkansas ("the State"), *ex rel.* Arkansas Attorney General Leslie Rutledge ("Attorney General"), by and through the Consumer Utilities Rate Advocacy Division ("CURAD"), and for her Response Brief, states as follows:

### I.  BACKGROUND

On November 16, 2018, Plaintiffs Sierra Club ("Sierra") and National Parks Conservation Association ("NPCA") filed a Complaint and Demand for Jury Trial ("Complaint") and a Notice of Lodging of Settlement Agreement ("Settlement Agreement") between themselves and Defendants Entergy Arkansas, Inc., Entergy Power, LLC, and Entergy Mississippi, Inc. (collectively referred to as "Entergy").[1] The Settlement Agreement between Sierra, NPCA, and Entergy purports to resolve a number of claims between the parties, which are the subject of the Complaint.[2]

---

[1] *See* Docket Entry Nos. 1 and 11.

[2] *See* Docket Entry No. 11.

On December 17, 2019, Plaintiffs filed an Amended Complaint and Demand for Jury Trial ("Amended Complaint"). Within the Amended Complaint, Plaintiffs presented two additional counts for relief based on multiple alleged violations of the opacity standard in 40 C.F.R. § 60.42(a)(2) at the White Bluff Plant, and the opacity standard in Sections 3(b) and 6 of the White Bluff Title V Permit.

Opening Briefs were filed by the parties on March 23, 2019, pursuant to the Court's September 30, 2019, Order directing the parties to brief specific issues identified by the Court ("Briefing Order").[3] Pursuant to a subsequent Order setting the dates and specifics for briefing,[4] and the Court's grant of additional time,[5] the Attorney General now presents her Response Brief.

## II.   **STANDING OF SIERRA AND NPCA HAS NOT BEEN SHOWN**

As an initial matter, the Attorney General finds the arguments by the Arkansas Affordable Energy Coalition ("Coalition") that Plaintiffs Sierra and NPCA do not have standing to bring the Amended Complaint before this Court to be compelling.[6] The Attorney General endorses and adopts the Coalition's position on this matter and concurs with the Coalition's urging that the Court first determine whether Plaintiffs lack standing based on the allegations of their Amended Complaint. Likewise, the Attorney General agrees with the Coalition that if Plaintiffs lack standing, this Court does not have jurisdiction over the Amended Complaint.

---

[3] *See* Docket Entry #53.

[4] *See* Docket Entry #64.

[5] *See* Docket Entry #71.

[6] *See* Docket Entry #68, pp. 3-11.

### III. <u>PLAINTIFFS' SUBJECT MATTER JURISDICTION</u>

As discussed at length in the Opening Brief of the Coalition, this Court does not have subject matter jurisdiction over the Amended Complaint and thus has no jurisdiction to contemplate the Settlement Agreement. The Attorney General adopts and incorporates the Coalition's position on this matter as detailed in its Opening Brief.[7] The Court should first determine whether the Court properly has subject matter jurisdiction over the Amended Complaint. If the Court lacks subject matter jurisdiction over the Amended Complaint, the Court does not have jurisdiction to contemplate the Settlement Agreement.

### IV. <u>STANDING BASED ON ALLEGED ECONOMIC INTEREST AND INJURY</u>

As discussed in her Opening Brief, the Attorney General meets the requirements for standing in this case. The Attorney General's intervention in this case is not based merely on the doctrine of *parens patriae* as claimed by Entergy in its Opening Brief.[8] The State has an interest in the impacts the Amended Complaint and the Settlement Agreement would have upon its citizens, and only the State can adequately protect its interests and that of its citizens. Unless Entergy is prepared to hold its customers harmless from the risk of any additional costs that may result from the allegations of the Amended Complaint or the Settlement Agreement, the Attorney General has a statutory duty to protect those customers from potential harm.

---

[7] *Id.*, pp. 14, 42-44.

[8] Docket Entry #67, p. 5.

Similarly, the State has a legal interest in enforcing state laws which must be protected.

## A. Injury-In-Fact

An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The Attorney General's assertions of injury-in-fact are not abstract or speculative as Entergy would have the Court believe.[9] Nor is the standing of the Attorney General lacking because it rests on a "mere 'possibility of increased rates' in the future."[10] The State of Arkansas has a duty to act on behalf of Arkansas consumers when utilities petition for increased rates or when any action could result in an impact to rates.[11] The Attorney General's Opening Brief described for the Court two paths available to Entergy to enact a charge on its Arkansas ratepayers: (1) open a general rate increase proceeding whereby the proposed rates are evaluated and approved by the Arkansas Public Service Commission ("APSC") before they are charged to customers; or (2) enact an immediate surcharge whereby rates are charged to customers immediately

---

[9] *Id.*, p. 3.

[10] *Id.*

[11] Docket Entry #17, ¶ 7, p. 3; *See also* Ark. Code Ann. §§ 23-4-301, *et seq*.

upon filing, without evaluation and approval by the APSC.[12] Entergy in its Opening Brief admits that these same two options are available to it.[13]

> As stated in *Waterkeeper Alliance, Inc. v. Wheeler*, 330 F.R.D. 1 (2018)
>
> to determine if a legally protected interest will be "impaired," courts "look[ ] to the 'practical consequences' of denying intervention, even where the possibility of future challenge to the regulation remain[s].' " (internal citations omitted).

As noted by both the Attorney General and the Coalition, Entergy Arkansas, Inc. (now legally "Entergy Arkansas, LLC" and referred to hereafter as "EAL") currently has an Energy Cost Recovery Rider ("ECR") tariff approved by the APSC which will operate to automatically flow through to its customers any economic impact from the installation of costly scrubbers or early shutdown of the two plants at issue in the Amended Complaint, White Bluff and Independence.[14] A decision in this Court has the potential to present itself directly and immediately in the rates paid by Entergy's Arkansas customers. The practical effect of denying intervention is that the Attorney General's duty to act on behalf of Arkansas consumers when a utility action could result in an impact to rates would be subverted and impaired. The State has an

---

[12] While it is true that APSC approval of a new interim surcharge is contemplated by Arkansas statute, such as for a new project under Act 310 of 2018, a previously-approved interim surcharge such as EAL's ECR (discussed below) does not require any additional APSC approval for it to be utilized to immediately charge costs to customers. Act 310 of 2018, as amended, is codified in Ark. Code Ann. §§ 23-4-501, *et seq*.

[13] Docket Entry #67, p. 6.

[14] Docket Entry #66, p. 7; tariff included in Appendix A, Declaration of Michael A. Sappington, Attachment A; Docket Entry #68, pp. 2, 17-18; tariff included as Exhibit L.

interest in the impact the Amended Complaint and the Settlement Agreement would have upon its citizens, and only the State can adequately protect its interests and that of its citizens.[15] This invasion of the State's legally protected interest is not conjectural or hypothetical, it is concrete and particularized, as well as actual and imminent. Thus, immediate surcharge presents the injury-in-fact on which the Attorney General's standing is rightly placed.

Additionally, in *Waterkeeper Alliance, Inc. v. Wheeler*, 330 F.R.D. 1 (2018), it is noted that States generally have a protectable legal interest in enforcing state laws. The Arkansas Supreme Court has previously stated that

> it is settled beyond excuse for extensive citations of authority that a public entity may not abandon any part of its property devoted to public service without the consent of the State.[16]

Shuttering two viable facilities which currently provide necessary baseload electric generation to Arkansas ratepayers is analogous to abandonment. As discussed in the Attorney General's Opening Brief, the closure of White Bluff and Independence will result in assets which can no longer provide ratepayer benefits.[17] More importantly, if Sierra, NCPA, and Entergy are successful in their efforts to obtain a Court order requiring closure of these plants *before* state regulatory authorities have provided consent, Entergy will have "abandoned" these assets without appropriate regulatory oversight in clear contravention of state law. *North Little Rock Water Co. v.*

---

[15] Docket Entry #17, ¶ 7, p. 3.

[16] *North Little Rock Water Co. v. Waterworks Commission of City of Little Rock*, 199 Ark. 773, 136 S.W.2d 194, 198 (1940).

[17] Docket Entry #66, Appendix A, Declaration of Michael A. Sappington, pp. 8-12.

*Waterworks Commission of City of Little Rock*, 199 Ark. 773, 136 S.W.2d 194, 198 (1940). Once again, this invasion of the State's legally protected interest is not conjectural or hypothetical, it is concrete and particularized, as well as actual and imminent. Thus, this contravention of state law also presents an injury-in-fact on which the Attorney General's standing is rightly placed.

Contravention of state law can also be seen in Entergy's failure to present any and all affirmative defenses to the allegations in the Amended Complaint. The Attorney General agrees with the Coalition that the statute of limitations affirmative defense cannot be waived by Entergy.[18] Even if such a defense could be waived, the Amended Complaint and the Settlement Agreement which purports to remedy the counts alleged, involve property held by Entergy which is devoted to the public service. As noted earlier, the Arkansas Supreme Court has previously held that a public entity may not abandon any part of its property devoted to public service without the consent of the State. Failure of Entergy to take all steps to protect its plants at White Bluff and Independence from unreasonable closure when an affirmative defense is available is further tantamount to abandonment. These plants were approved by the State for construction on behalf of the citizens of Arkansas, have been paid for by the Arkansas customers of Entergy and as such they are devoted to the public service, essentially held in trust for the benefit of its ratepayers. Entergy will have "abandoned" these assets without appropriate regulatory oversight in clear contravention of state law. *North Little Rock Water Co. v. Waterworks*

---

[18] Docket Entry #68, pp. 3, 39-45.

7

*Commission of City of Little Rock*, 199 Ark. 773, 136 S.W.2d 194, 198 (1940). Once again, this invasion of the State's legally protected interest is not conjectural or hypothetical, it is concrete and particularized, as well as actual and imminent. Thus, this contravention of state law presents yet another injury-in-fact on which the Attorney General's standing is rightly placed.

### B. Causation

As noted in the Attorney General's Opening Brief, as an element needed to demonstrate standing, causation requires a demonstrated connection between the injury and the conduct complained of.[19] Entergy's own statements in its Opening Brief refute its claim that the chain of causation is broken by the APSC's authority to approve rates and market forces that influence the price of electricity.[20] Market forces that influence the price of electricity have no bearing on whether or not a charge may be immediately placed on a utility customer's bill through the utilization of a current and validly filed tariff such as EAL's ECR. Entergy itself notes that there are two paths available to it to enact a charge on its Arkansas ratepayers: (1) a general rate increase proceeding whereby the proposed rates are evaluated and approved by the APSC before they are charged to customers; or (2) an immediate surcharge whereby rates are charged to customers immediately upon filing, without evaluation and approval by the APSC.[21] Therefore, APSC approval of rates is not a

---

[19] Docket Entry #66, p. 11.

[20] Docket Entry #67, p. 3.

[21] *Id.*, p. 6.

condition precedent for Entergy imposing costs on its customers. The State of Arkansas has a duty to act on behalf of Arkansas consumers when utilities petition for increased rates or when any action could result in an immediate impact to rates.[22] A decision in this Court has the potential to present itself directly and immediately in the rates paid by Entergy's Arkansas customers. Thus, there is a demonstrated connection between the injury-in-fact demonstrated by the Attorney General and the conduct complained of. The existence of the APSC does not change that fact.

In *Waterkeeper Alliance, Inc. v. Wheeler*, 330 F.R.D. 1 (2018), it is noted that States generally have a protectable legal interest in enforcing state laws. The Attorney General agrees that the Entergy Companies face existing obligations under the Arkansas Division of Environmental Quality ("ADEQ") Order and the Arkansas Regional Haze State Implementation Plan under the Clean Air Act ("Arkansas Regional Haze SIP").[23] However, the Attorney General refutes any inference that the chain of causation for her standing in this matter is somehow broken by the existence of these obligations. No matter what obligations Entergy may or may not have under the ADEQ Order or the Arkansas Regional Haze SIP, Entergy finds itself today before this Court regarding the Amended Complaint and tangentially, the Settlement Agreement. A decision in this Court has the potential to present itself directly and immediately in the rates paid by Entergy's Arkansas customers and to how Entergy's actions within this case fit within the laws of Arkansas. Thus, there is a demonstrated

---

[22] Docket Entry #17, ¶ 7, p. 3; *See also* Ark. Code Ann. §§ 23-4-301, *et seq*.
[23] Docket Entry #67, p. 4.

connection between the injury-in-fact demonstrated by the Attorney General and the conduct complained of. The mere existence of any obligation Entergy may or may not have under the ADEQ Order or the Arkansas Regional Haze SIP does not change that fact.

As noted in the Attorney General's Opening brief, Arkansas ratepayers can draw a direct line between this Court's decision and a financial impact on their utility bills, such as the line item representing fuel cost recovery.[24] Thus, the Attorney General has demonstrated the causation prong of Article III standing.

### C. Redressability

The redressability prong of Article III standing requires a prospective intervenor to "establish that a favorable decision will likely redress the injury." *Nat'l Parks Conservation Ass'n*, 759 F3d at 975. As discussed in the Attorney General's Opening Brief, granting Plaintiffs' requested relief would result in the installation of scrubbers at both White Bluff and Independence, or early shutdown of the plants requiring the purchase of replacement power.[25] Additionally as noted above, EAL currently has a tariff on file at the APSC which will operate to automatically flow through to its customers any economic impact from scrubber installations or the early shutdown of the two plants at issue in the Amended Complaint, White Bluff and

---

[24] Docket Entry #66, Appendix A, Declaration of Michael A. Sappington, pp. 6-7, 8-14.

[25] *Id*.

10

Independence.[26] This would immediately leave customers with higher bills which sidestep APSC review and approval.[27] A favorable ruling in this matter, including the potential for a dismissal or assertion of affirmative defenses, however, would result in none of those things occurring in the near term.

Thus, a decision in this Court has the potential to present itself directly and immediately in the rates paid by Entergy's Arkansas customers. As discussed in her Opening Brief, if the Attorney General "prevails, it avoids, or at least delays, the costly technology the Environmental Groups seek."[28] Customers will not be harmed. As such, the Attorney General has established the redressability prong of Article III standing.

## V.     **CONCLUSION**

The Office of Arkansas Attorney General Leslie Rutledge submits this Response Brief and believes the above premises support the Attorney General's Motion to Intervene. Therefore, the Attorney General respectfully restates her request that this Honorable Court:

A)     Issue an Order granting the Office of Arkansas Attorney General Leslie Rutledge's Motion to Intervene; and

B)     Grant all other relief which may be just and appropriate.

---

[26] *Id.*, p. 7; tariff included in Appendix A, Declaration of Michael A. Sappington, Attachment A.

[27] *Id.*, Appendix A, Declaration of Michael A. Sappington, pp. 8-14.

[28] *Id.*, p. 12, quoting *Nat'l Parks Conservation Ass'n*, 759 F3d at 975.

11

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

By: /s/ Sarah Tacker
Sarah Tacker, Ark. Bar No. 2002189
Senior Assistant Attorney General
Sarah.Tacker@ArkansasAG.gov
(501) 682-1321

Christina L. Baker, Ark. Bar No. 2016001
Assistant Attorney General
Christina.Baker@ArkansasAG.gov
(501) 682-3625

Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201

*Counsel for the State of Arkansas*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

*Attorneys for Plaintiffs*

George E. Hays, WA Bar No. 53874
Law Office of George Hays
PO Box 843
Bellevue, WA 98008
(415) 716-9159
georgehays@mindspring.com

Naomi Kim Melver, WA Bar No. 52463
Law Office of Naomi Kim Melver
PO Box 25
Greenbank, WA 98253
(541) 513-0540
nmelver@gmail.com

Richard H. Mays, AR Bar No. 61043
Williams & Anderson, PLC
111 Center Street, Suite 2200
Little Rock, AR 72201-2413
(501) 362-0059
rmays@williamsanderson.com

*Attorneys for Defendants*

Debra J. Jezouit
Baker Botts LLP
1299 Pennsylvania Avenue
Washington, DC  20004
(202) 639-7700
debra.jezouit@bakerbotts.com

G. Alan Perkins
Perkins Peiserich Greathouse Morgan Rankin
PO Box 251618
Little Rock, AR 72225-1618
(501) 603-9000
alan@ppgmrlaw.com

John F. Peiserich
Perkins Peiserich Greathouse Morgan Rankin
PO Box 251618
Little Rock, AR 72225-1618
(501) 603-0556
john@ppgmrlaw.com

Kimberly Bennett
Entergy Services, Inc.
PO Box 551
Little Rock, AR 72203-0551
(501) 377-5715
kbenne3@entergy.com

Susan Margaret Floyd
Entergy Services, Inc.
PO Box 551
Little Rock, AR 72203-0551
(501) 576-4734
sfloyd33@entergy.com

Timothy K. Webster
Sidley Austin LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8138
twebster@sidley.com

*Attorneys for Arkansas Affordable Energy Coalition*

Danica L. Milios
Michael Nasi
Jackson Walker L.L.P.
100 Congress, Suite 1100
Austin, TX 78701
dmilios@jw.com
mnasi@jw.com

Mark H. Allison
Randall L. Bynum
Dover Dixon Horne PLLC
Suite 3700
425 West Capitol Avenue
Little Rock, AR 72201
mallison@ddh.law
rbynum@ddh.law


By:  /s/ *Sarah Tacker*
Sarah Tacker