IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

SIERRA CLUB AND                          )
NATIONAL PARKS CONSERVATION              )
ASSOCIATION,                             )
                          *Plaintiffs*,  )
                                         )
          V.                             )     NO. 4:18-cv-00854-KGB
                                         )
ENTERGY ARKANSAS, LLC, ENTERGY           )
POWER, LLC, AND ENTERGY                  )
MISSISSIPPI, LLC,                        )
                          *Defendants*.  )

**RESPONSE BRIEF OF THE ARKANSAS AFFORDABLE ENERGY
COALITION TO SIERRA CLUB AND NATIONAL PARKS
CONSERVATION ASSOCIATION**

The Arkansas Affordable Energy Coalition ("Coalition"), by and through its undersigned

counsel, submits the following Response to the Opening Brief filed by the Plaintiffs Sierra Club

and National Parks Conservation Association (ECF 69) addressing the issues raised in the Court's

September 30, 2019 Order (ECF 53).

**ARGUMENT**

**I.    THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' PSD-
BASED CLAIMS.**

In Section I.B. of their Opening Brief (ECF 69 at 21), Plaintiffs argue that the Court has

subject matter jurisdiction over their PSD-based claims in Counts 1 through 6 of their Amended

Complaint because the "collateral attack" holding in *Sierra Club v. Otter Tail Power Co.*, 615 F.3d

1008 (8th Cir. 2010), does not apply to "unpermitted modifications."   This argument does not

protect the Plaintiffs' PSD-based claims from dismissal for lack of subject matter jurisdiction,

however.

1

The Plaintiffs assert that the Court's subject-matter jurisdiction in this case is based in the first instance on the Clean Air Act citizens suit provisions of 42 U.S.C. § 7604(a), which states the following in relevant part:

> [A] ny person may commence a civil action *on his own behalf—*
>
> **(1)** against any person . . . who is alleged to have violated *(if there is evidence that the alleged violation has been repeated)* or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation,
>
> \* \* \* \* \*
>
> or
>
> **(3)** against any person who proposes to construct or constructs any new or modified major emitting facility *without a permit required under part C of subchapter I of this chapter* (relating to significant deterioration of air quality) or part D of subchapter I of this chapter (relating to nonattainment) or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit.

42 U.S.C. § 7604(a) (emphasis added).   Plaintiffs' PSD-based claims are not allowed under those provisions, however, for two reasons: first, under subsection (a)(1), the PSD-based claims are one-time events that will not repeat; and second, under subsection (a)(3), the White Bluff and Independence facilities had facially valid permits.

**A.      Plaintiffs' Alleged PSD Claims Are One-Time Events That Are Not Continuing and Will Not Repeat Under Section 7604(a).**

Plaintiffs' Counts 1 through 6 each hinge on the Defendants' alleged failure to obtain a PSD permit for the replacement of economizers on the boilers of the Independence Unit 1 in 2009,

Independence Unit 2 in 2008, and White Bluff Unit 2 in 2007.[1]   The mere fact that these projects

occurred does not by itself trigger PSD review, unless the projects were "major modifications."[2]

In *Otter Tail*, the Eighth Circuit held that PSD and associated BACT requirements accrue

at the time of construction of a modification.   615 F.3d at 1014 ("It is thus clear that each of Sierra

Club's PSD claims first accrued upon commencement of the relevant modification . . .").   The

Court further held that any duty to obtain a PSD permit or apply BACT was not a continuing duty.

*Id*. at 1017, 1018 ("there is no ongoing duty to obtain PSD permits"; "we conclude that the plain

language of the statute and the regulations . . . prohibited only modification . . . without a PSD

permit or BACT, not its operation").   Thus, the Court held that, because there was no ongoing

duty with respect to PSD permit requirements, the five-year statute of limitations barred those

claims.   *Id*. at 1018.

In *Nucor Steel-Ark. v. Big River Steel LLC*, 825 F.3d 444 (8th Cir. 2016), the Court

considered a similar claim, but without the statute of limitations issue.   There, the plaintiff filed a

citizens suit under 42 U.S.C. §7604(a) alleging that the defendant was constructing a major

stationary source with a defective PSD permit.   The lawsuit was dismissed for lack of subject

matter jurisdiction.

With respect to jurisdiction under §7604(a)(1), the Court explained:

> Here, all of Nucor's allegations relate to *one-time permitting requirements* under
> either the CAA's PSD requirements or the Arkansas SIP. . . . Additionally, all of
> Nucor's SIP-related counts refer to BACT requirements, which we previously have
> held are "best understood as . . . incorporated into a facility's construction plans

---

[1] Counts 1, 3, and 5 allege that Defendants failed to obtain a PSD permit.   Counts 2, 4, and 6
allege that Defendants failed to obtain a Title V operating permit that would have incorporated the
terms and conditions of the corresponding PSD permit that the Defendants allegedly should have
obtained as averred in Counts 1, 3, and 5.

[2] A project is not a major modification that triggers PSD review unless it causes both (1) a
"significant emissions increase" and (2) a "significant net emissions increase."   40 CFR
§52.21(a)(2)(iv)(a).

and PSD permits, not as establishing an ongoing duty to apply BACT independent of the permitting process." *Otter Tail*, 615 F.3d at 1017. Taking the facts as alleged, even though Nucor's allegations that Big River violated the Arkansas SIP present a challenge to an "emission standard or limitation" as that term is defined in 42 U.S.C. § 7604(f)(4), Nucor has not alleged the repeated or ongoing violations necessary to support a citizen suit under § 7604(a)(1). Accordingly, the district court did not err by concluding that it lacked jurisdiction under § 7604(a)(1).

*Nucor*, 825 F.3d at 450 (emphasis added).   Likewise, in this case, all of Plaintiffs' PSD claims are based on one-time events that occurred when construction on these projects at White Bluff and Independence commenced.   One-time violations are not continuing or repeated violations. Accordingly, they cannot form the basis of the Court's subject matter jurisdiction under 42 U.S.C. §7604(a)(1).

> ### B.     The Defendants Have Facially Valid Permits For White Bluff And Independence.

Arkansas has a single permit program that includes both PSD pre-construction requirements and Title V operating requirements.[3]   The Defendants have facially valid permits for the Independence and White Bluff facilities issued under Arkansas' EPA-approved permitting program.   These permits were issued pursuant to the regulations of the Arkansas State Implementation Plan, which incorporate the Clean Air Act PSD requirements by reference.[4]   As a result, the Court does not have subject matter jurisdiction under 42 U.S.C. § 7604(a)(3).

In *Nucor*, the Court explained that §7604(a)(3) does not permit a citizens suit on a facially valid permit:

> The district court rightly noted that such an argument would mean that § 7604(a)(3) authorizes a citizen suit against anyone who proposes to construct or constructs a major emitting facility, even if that person already has obtained a permit issued by the appropriate regulatory authority pursuant to part C, as long as the plaintiff

---

[3] Arkansas is a single permit system state issuing permits that include PSD preconstruction requirements and Title V operating requirements.   *Nucor*, 825 F.3d at 447.

[4] *See* ARK. POLLUTION CONTROL & ECOLOGY REGULATION No. 19, Chapter 9, available at http://www.adeq.state.ar.us/regs/files/reg19_final_191010.pdf.

alleges that the person failed to meet the requirements of § 7475(a). Such an argument amounts to a collateral attack on a permit, rather than the protection against unpermitted construction that § 7604(a)(3) purports to provide. . . . Accordingly, the district court did not err by finding it lacked jurisdiction under 42 U.S.C. § 7604(a)(3) to entertain Nucor's allegations that Big River did not meet the requirements to obtain the PSD permit needed to begin construction.

[T]he [lower] court merely noted that the CAA does not authorize a collateral attack on a facially valid state permit—stated another way, § 7604(a)(3) does not authorize preconstruction citizen suits against parties that either have obtained a permit or are in the process of doing so.

*Nucor*, 825 F.3d at 451, 452.   Here, the Defendants have facially valid Title V operating permits issued pursuant to the Arkansas State Implementation Plan for both the White Bluff and Independence plants that contain emission limits and permit conditions for the boilers that the Plaintiffs allege were modified.   *See* White Bluff Permit 0263-AOP-R7, Coalition Exhibit D at 45-57 (ECF 68-4); Independence Permit 0449-AOP-R7, Coalition Exhibit E at 29-32 (ECF 68-5).

During the permitting process, Plaintiff Sierra Club raised its concerns about applicability of the PSD requirements to the White Bluff facility in Permit 0263-AOP-R7, *see* Response to Comment 3, Plaintiffs' Ex. 12 at 7 (ECF 69-12); Coalition Ex. D at 8 (ECF 68-8), and to the Independence facility in Permit 0449-AOP-R7, *see* Response to Comment IV, Plaintiffs' Ex. 4 at 6 (ECF 69-4); Coalition Ex. E-6 (ECF 68-6).   The permitting authority, the Arkansas Department of Environmental Quality ("ADEQ"),[5] considered and responded to Sierra Club's concerns and proceeded to issue permits for White Bluff and Independence.   *See* Coalition Ex. D (ECF 68-4); Coalition Ex. E (ECF 68-5).   Plaintiff Sierra Club did not appeal those decisions.[6]   Defendants' facially valid permits may not be attacked through a Clean Air Act citizens suit.   Consequently,

---

[5]  Now the Arkansas Division of Environmental Quality.

[6]  EPA regulations require that a state provide judicial review of permitting decisions in order to have an EPA-approved permit program.   *See* 40 CFR §70.4(b)(3)(x).   Arkansas law provides for administrative review of permit decisions under Arkansas Code Ann. § 8-4-205, and provides judicial review under Arkansas Code Ann. § 8-4-222, *et seq*.

the Court also does not have subject-matter jurisdiction of Plaintiffs' PSD-based claims under §7604(a)(3).

## II.     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS OF OPACITY VIOLATIONS OF THE NEW SOURCE PERFORMANCE STANDARDS.

In Section I.A of their Opening Brief, Plaintiffs argue that the Court has subject matter jurisdiction under § 7604(a) over their opacity claims.   (ECF 69 at 18).   These claims are laid out in Ex. B to Plaintiffs Amended Complaint, which alleges 6-minute opacity "Violations of 40 CFR § 60.42(a)(2) and Special Conditions 3(b) and 6 of Permit #0263-AOP-R7" between March 23, 2013 and February 16, 2017.   (ECF 54 at 57-59).   Plaintiffs' Seventh Claim for relief in its Amended Complaint alleges that the White Bluff facility "has violated the opacity standard in 40 C.F.R. § 60.42(a)(2) at least 323 times." (ECF 54 at 32).[7]   40 C.F.R. § 60.42(a)(2) is part of a New Source Performance Standard ("NSPS") promulgated by EPA under 42 U.S.C. § 7411.

The Clean Air Act provides that each state may develop a procedure for "implementing and enforcing" NSPS, and, if the procedure is adequate, EPA must delegate its authority to implement and enforce such standards to the State.   42 U.S.C. § 7411(c).   The ADEQ is delegated to implement and enforce the NSPS for major sources located in Arkansas.   ARK. POLLUTION CONTROL & ECOLOGY REG. §19.304; 40 C.F.R. § 52.170.   The ADEQ implements those standards through its permitting program, including its Title V permitting program.

A similar claim asserted by Sierra Club was rejected by the district court in the *Otter Tail* case because it was not a permissible claim under § 7604(a).   *Sierra Club v. Otter Tail Corp.*, 608 F. Supp. 2d 1120, 1131 (D.S.D. 2009).   There, Sierra Club asserted that the facility was violating

---

[7] As discussed further below, Plaintiffs' Eighth Claim for relief in its Amended Complaint alleges that the White Bluff facility has violated opacity provisions in its permit that implement this New Source Performance Standard 323 times.   (ECF 54 at 32).

applicable NSPS emission limits which were not included in the facility's permit.    The Court held

the claims were not allowed because citizens suits under 42 U.S.C. § 7604(a) are limited to claims

that a facility failed to get a permit or are violating a permit.    The Court explained:

> Defendants applied for and received an amended Title V operating permit in 2001.
> That permit did not require defendants to comply with the NSPS provisions of the
> CAA. A Title V permit is a compilation in a single document of existing applicable
> emission limits. 42 U.S.C. § 7661c(a). Plaintiff does not contend that defendants
> are not in compliance with the terms of that operating permit. Instead, plaintiff
> contends that defendants are not in compliance with NSPS emissions provisions
> (which provisions DENR did not include in the permit). The citizen suit provisions
> of the CAA do not authorize such a claim. Citizen suits are limited to claims that
> sources of pollution either failed to obtain a permit or are violating a permit. 42
> U.S.C. § 7604(a).

*Id*.

The Independence and White Bluff permits contain terms and conditions by which the

ADEQ has implemented the applicable NSPS opacity provisions, as discussed further below.

Consequently, because the Court's subject matter jurisdiction under § 7604 is limited to "claims

that sources of pollution either failed to obtain a permit or are violating a permit", *Otter Tail*, 608

F. Supp. 2d at 1130-31, the Court lacks subject matter jurisdiction over Plaintiffs' seventh claim

for relief.[8]

## III.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS NSPS OPACITY CLAIMS BECAUSE THAT WOULD CONSTITUTE A COLLATERAL ATTACK ON THE DEFENDANTS' PERMITS.

As explained above, the NSPS are implemented through Title V permits issued through

approved Title V permitting programs.    The NSPS at issue in this case expressly provides that

exceedances of the opacity provisions in 40 CFR § 60.42(a)(2) that occur during periods of startup,

shutdown and malfunction are not violations – an important part of the NSPS that Plaintiffs fail to

---

[8] Even so, the Defendants may have defenses to such a claim under the Arkansas SIP and the permits.

mention.   40 CFR § 60.8(c), which is part of the General Provisions section applicable to all

NSPS, including § 60.42, states:

> Operations during periods of startup, shutdown, and malfunction shall not constitute representative conditions for the purpose of a performance test *nor shall emissions in excess of the level of the applicable emission limit during periods of startup, shutdown, and malfunction be considered a violation of the applicable emission limit* unless otherwise specified in the applicable standard.

*Id.* § 60.42 (emphasis added).

Another section of the NSPS General Provisions, 40 CFR § 60.11(c), is similar; it states:

> (c) The opacity standards set forth in this part shall apply at all times *except during periods of startup, shutdown, malfunction*, and as otherwise provided in the applicable standard.

*Id*. § 60.11(c) (emphasis added).   Even though the startup, shutdown and malfunction provision

in 40 CFR § 60.8(c) is part and parcel of the NSPS opacity provision in § 60.42 that Plaintiffs

claim has been violated 323 times, the Plaintiffs have not alleged that these exceedances did not

occur during a period of startup, shutdown or malfunction.[9]   Consequently, Plaintiffs have failed

to allege a critical element of their cause of action necessary to support jurisdiction under 42 U.S.C.

§ 7604(a), *i.e.*, that any of the alleged exceedances occurred during normal operations of the

facility.[10]

---

[9]  These terms "startup", "shutdown", and "malfunction" are defined for purposes of all the NSPS, including § 60.42, in the General Provisions definitions at 40 C.F.R. § 60.2.

[10]   The Coalition believes that many of the alleged opacity violations may have occurred during periods of startup, shutdown or malfunction, and thus would not be violations of the emission standard in 40 CFR §60.42 or of the permit.   For example, lines 14-17 on page 1 of Exhibit B to the Plaintiffs Amended Complaint claim that opacity exceedances occurred at White Bluff Unit 2 on August 8, 2013.   (ECF 54 at 57).   However, on August 9, 2013, Entergy informed the ADEQ that Unit 2 had experienced a malfunction the previous day that had resulted in excess emissions.   *See* August 9, 2013 Malfunction Notification email (available at ADEQ Zylab database as Doc. Z0001OTGC) attached hereto as Ex. X.   Plaintiffs are not entitled to an inference that any of these 323 events are in violation of § 60.42(a)(2) because of the startup, shutdown and malfunction provisions of § 60.8(c) and § 60.11(c).   An inference is not plausible if the facts alleged are

The State of Arkansas through the ADEQ has implemented the NSPS in the Title V permits issued for White Bluff and Independence.   These permits also include the provisions of 40 CFR § 60.8 and § 60.11 that limit those opacity standards to periods that are not periods of startup, shutdown or malfunction.   For example, Specific Condition 3.b of the White Bluff permit states:

> Opacity shall not exceed 20 percent except for one six-minute period per hour of not more than 27 percent opacity *and except as provided by 40 CFR 60.8 and 60.11*.

Coalition Ex. D at 48 (ECF 68-4) (emphasis added).   The White Bluff permit also has provisions for reporting excess emissions resulting from startup, shutdown and malfunctions so that the ADEQ can take appropriate action.   *See* White Bluff Permit, Specific Conditions 7, 8, 27, 28, Coalition Ex. D at 48-49, 54-55 (ECF 68-4).   Furthermore, consistent with 40 CFR § 60.8 and § 60.11, Specific Condition 7 explicitly excludes periods of startup, shutdown and malfunction from the calculation of whether the facility is in compliance with the NSPS, stating:

> Only those opacity exceedances that are not attributable to startup, shutdown and malfunction will be used for calculating the percentage of compliance with the NSPS opacity limit.

Coalition Ex. D at 49 (ECF 68-4).

Sierra Club specifically commented to ADEQ and EPA objecting to the proposed opacity provisions during the White Bluff Title V permitting process in 2012.   *See* Sierra Club ADEQ Comments, Ex. 10 at 58 (ECF 69-10); Sierra Club Title V Petition, Ex. 11 at 113 (ECF 69-11). After considering these comments, ADEQ issued the White Bluff permit.   Coalition Ex. D (ECF 68-4).   EPA did not respond to Sierra Club's Petition to Object, which Sierra Club has now withdrawn.   (ECF 69-9).   The applicable opacity NSPS was incorporated into the White Bluff Permit, and terms and conditions were included to implement that standard.   Plaintiff Sierra Club

---

precisely the result one would expect from lawful conduct.   *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 566-567 (2007)).

had the opportunity to appeal the White Bluff permit under state law, and also sought review of the permit by EPA through the Title V objection process.   Consequently, Plaintiffs' claim for violations of the provisions of the opacity standards at 40 CFR § 60.42 is an impermissible collateral attack on the White Bluff permit.   *Otter Tail*, 615 F.3d at 1021.[11]

## IV.   PLAINTIFFS DO NOT HAVE STANDING TO ASSERT ALLEGED OPACITY VIOLATIONS.

Moreover, Plaintiffs have not shown standing with respect to the alleged opacity violations in their Amended Complaint, just as they failed to do with the alleged PSD violations.   42 U.S.C. §7604(a) only allows jurisdiction for claims that a plaintiff brings "on his own behalf."   Plaintiffs' members have not alleged a cognizable injury, because they have not alleged a particularized, concrete injury that has a geographic and temporal nexus with any of the alleged 6-minute opacity violations.   In addition, Plaintiffs' members have not met the redressability requirements for an Article III injury since the relief requested in the Amended Complaint would not redress any concrete, particularized injury relating to the alleged opacity violations.

Exhibit B of Plaintiffs' Amended Complaint alleges opacity limit violations consisting of 323 six-minute periods when emissions from the facility exceeded 20% opacity over the space of almost 5 years, from March 23, 2013 through Feb. 16, 2017.   This means that the emission control equipment was operating with no opacity exceedances the vast majority of the time.   Yet, the declarations accompanying the Amended Complaint do not speak to these alleged violations at all.

For example, Mr. Stewart lives in Jasper, Arkansas, which is almost 120 miles from the White Bluff plant, and complains about decreased visibility in the nearby Buffalo National River

---

[11] "By creating in 42 USC § 7661d(b)(2) an avenue of judicial review that passes through 42 USC § 7607, Congress effectively foreclosed the alternative avenue of citizen suit enforcement through 42 USC §7604." (quoting *Romoland Sch. Dist. v. Inland Empire Energy Ctr., LLC*, 548 F.3d 738, 775 (9th Cir. 2008)).

"during bird migration events when the wind conditions are favorable;" however, he does not allege any particularized, personal injury that was caused by any of the 323 6-minute alleged opacity violations that occurred 120 miles from where he lives.   Mr. Allen lives 87 miles away from White Bluff, and he complains about decreased visibility in the Buffalo National River (over 100 miles from White Bluff) and Hot Springs National Park (53 miles from White Bluff), but he does not allege any injury that occurred to him that was caused by any of the 323 alleged opacity violations.   Mr. Castleberry lives 32 miles from White Bluff and also complains about decreased visibility in the Buffalo National River and in Hot Springs National Park; but likewise, he does not allege any injury that occurred to him as a result of any of these 323 alleged opacity violations that happened 32 miles away.   Likewise, Ms. Nye does not allege any injury to her caused by any of the 323 alleged opacity violations.

Consequently, the Plaintiffs have not met the geographic and temporal nexus requirements for standing.   *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533 (5th Cir. 2019).   They have not shown geographic proximity between any of the 323 alleged 6-minute opacity violations at the White Bluff facility and impacts at any of the specific locations dozens or one hundred or more miles away from White Bluff that affect their interests.   *Id.* at 538.   Nor have they satisfied the temporal requirement, *i.e.*, there is no allegation that any alleged injury to any of the declarants coincided with any of these 323 6-minute discharges that occurred over a space of almost five years.   Simply put, they weren't there when any of the alleged violations happened.   *Id.* at 540.[12]

---

[12] *Compare Ctr. for Biological Diversity*, 937 F.3d at 540 ("Whether he will view any discharges depends on multiple factors, including how often Henderson makes these trips, how often platforms discharge pollutants, and how long the discharges have noticeable effects on the water in those areas before evaporating or dissipating. Petitioners have provided none of this information. Without evidence that Henderson's trips to platforms will occur at times when discharges are visible (or otherwise noticeable), we cannot conclude Henderson will ever view such discharges. Henderson cannot affirm that he will ever see pollution from wells drilled pursuant to the permit,

As previously explained, the NSPS expressly allows exceedances of 20% opacity during periods of startup, shutdown and malfunction.   To satisfy standing requirements, Plaintiffs must allege some concrete, particularized injury from exceedances greater than 20% opacity that occurred during normal operations of the facility – yet, they do not.[13]

Finally, with regard to redressability, as explained in the Coalition's Opening Brief, the Plaintiffs do not seek relief that would redress any concrete, particularized Article III injury resulting from any of the 323 alleged opacity exceedances in the Amended Complaint.   The remedy requested by the Plaintiffs of additional control technology to satisfy BACT (i.e. scrubbers) would not affect these alleged opacity violations because the particulate emissions that create opacity are controlled by another type of control technology, an electrostatic precipitator.[14] Further, none of the alleged injuries that the Plaintiffs' members purport to set forth in their declarations would be eliminated by any relief requested in the Amended Complaint with respect to these alleged opacity exceedances, especially since the exceedances are allowed under certain circumstances such as startup, shutdown and malfunction events.   *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).   Consequently, Plaintiffs do not have standing as to their claims of alleged opacity violations.

_____

so he cannot claim injury that is imminent or certainly impending. There is no temporal nexus sufficient for standing.").

[13] As Plaintiffs point out in their Opening Brief, the opacity standard is simply a "secondary check" to ensure the proper operation of particulate matter control devices.   (ECF 69 at 3). Furthermore, the standards does not apply during times of startup, shutdown or malfunction.   40 C.F.R. § 60.8(c).

[14] *See* White Bluff Permit, Source Description for SN-01 and SN-02, Coalition Ex. D. at 45, ¶ 2 (ECF 68-4).

**V.   PLAINTIFFS' PERMIT SHIELD ARGUMENT IS TRUMPED BY THE JURISDICTIONAL LIMITS OF § 7607(b)(2).**

Plaintiffs argue at page 15 of their brief that the so-called "permit shield" provision of Title V of the Clean Air Act, 42 USC § 7661(c)(f), does not preclude this Court from having subject matter jurisdiction over Plaintiffs' claims.   (ECF 69 at 26).   Plaintiff Sierra Club made this same argument in the *Otter Tail* cases, and the courts roundly rejected it.   The permit shield provision provides:

> Compliance with a permit issued in accordance with this subchapter shall be deemed compliance with section 7661a of this title. Except as otherwise provided by the Administrator by rule, the permit may also provide that compliance with the permit shall be deemed compliance with other applicable provisions of this chapter that relate to the permittee if:
>
> (1) the permit includes the applicable requirements of such provisions, or
>
> (2) the permitting authority in acting on the permit application makes a determination relating to the permittee that such other provisions (which shall be referred to in such determination) are not applicable and the permit includes the determination or a concise summary thereof.

42 U.S.C. § 7661c.   In the Eighth Circuit, Sierra Club argued that the lower court's decision that the EPA Title V objection process in § 7661d together with the jurisdictional bar in § 7607(b)(2) as to EPA action for which "review could have been obtained" "effectively excises" the permit shield provision from the Clean Air Act.   *Otter Tail*, 615 F.3d at 1022.   Sierra Club claimed that because the permit in that case did not contain a determination that the NSPS did not apply, there was no permit shield, and the lower court's dismissal of the case as a collateral attack under § 7607(b) rendered the permit shield "superfluous."   *Id.* at 1022-23.

The district court, however, had recognized that the permit shield provided in § 7661c(f) was in the nature of an affirmative defense, which was different than the statutory limitation on the court's jurisdiction in § 7607(b)(2).   *Otter Tail*, 608 F. Supp. 2d at 1130-1131.   On appeal, the Eighth Circuit agreed:

> While 7661c(f) is a statutory defense to liability, § 7607(b)(2) limits district court
> subject matter jurisdiction.  To the extent the two provisions are in tension, the
> jurisdictional limit is paramount. . . . Sierra Club argues that our interpretation of
> the jurisdictional provisions should not curtail the scope of the permit shield, but
> the more fundamental rule of construction holds that we must not expand federal
> court jurisdiction in service to a broad reading of the permit shield.
>
> * * * * *
>
> We conclude that because Sierra Club could have obtained judicial review of its
> NSPS claim through the process established by 42 U.S.C. § 7661d, district court
> review of that claim is foreclosed by § 7607(b)(2).

*Otter Tail*, 615 F.3d at 1022-23.   Thus, the permit shield defense in § 7661c(f) and statutory limits

on subject matter jurisdiction are not mutually exclusive, and the limits on the court's subject

matter jurisdiction trump the permit shield provisions.

Despite this, Sierra Club seizes on dicta in the Eighth Circuit's *Otter Tail* decision to argue

that the § 7607(b)(2) jurisdictional bar does not apply in this case.   The Eighth Circuit identified

at least two instances where the permit shield provision would be relevant, *i.e.*, in an enforcement

action by EPA or "where the issues raised in an enforcement action were not ripe for adjudication

during the permitting process."  *Id*. at 1023.   Neither of those situations exist here.   First, this

case is not an enforcement action by EPA.   Second, the issues Plaintiffs complain of were ripe for

adjudication during the White Bluff and Independence permitting proceedings.[15]   As the Plaintiffs

point out in their Opening Brief, Sierra Club commented on both the PSD issues and the opacity

---

[15] The Eighth Circuit in *Otter Tail* used the word "ripe" in the jurisdictional sense meaning
whether the issues were justiciable during the adjudicatory process at issue.   The Court cited
*Clean Air Implementation Project v. EPA*, 150 F.3d 1200 (D.C. Cir. 1998) which involved a
challenge to a rule; there, the court held that issues that were not ripe for adjudication in the
challenge to the rule, but which later arose in an enforcement action would not be barred by
§ 7607(b)(2), citing *Louisiana Environmental Action Network v Browner*, 87 F.3d 1379 (D.C. Cir.
1996).   That case also involved a challenge to an EPA rule, in which the court dismissed the case
because two of the petitioners did not have standing and the remaining petitioner's claim was not
ripe for adjudication.   *Id*. at 1381.

issues during the ADEQ permitting process and in Sierra Club's petitions to EPA to object to the Title V permits issued by ADEQ.[16]   Nevertheless, Sierra Club did not seek judicial review of the permits under Arkansas law, and it ultimately voluntarily withdrew its Title V Petitions to Object. Plaintiffs' Ex. 9 (ECF 69-9).   Plaintiffs' PSD claims and NSPS claims were both "ripe" for adjudication during the White Bluff and Independence permitting process, and were issues as to which review could have been obtained for purposes of §7607(b)(2).

## VI.   PLAINTIFFS' ATTEMPT TO DISTINGUISH *OTTER TAIL* BECAUSE ENTERGY DID NOT APPLY FOR A PERMIT FOR THE MODIFICATION MISSES THE POINT.

At pages 14-19 of their Opening Brief, Plaintiffs attempt to distinguish this case from *Otter Tail* with regard to their PSD-based claims, because Entergy "did not seek approval for its modifications through a permitting process."   (ECF 69 at 25-30).   This attempted distinction is without a difference.   As explained above, not every modification requires a permit or a permit amendment.[17]   Moreover, the exhibits to Plaintiffs' Opening Brief demonstrate that Entergy submitted documentation to DEQ during the permitting process for both White Bluff and Independence that demonstrated that the projects at those plants were not modifications for purposes of PSD review.   Independence, Plaintiffs' Ex. 2, Response to Comment V (ECF 69-4 at 6); White Bluff, Plaintiffs' Ex. 12, Response to Comment 3 (ECF 69-12 at 10-11) ADEQ agreed and therefore did not include PSD provisions in the permits.   Just as in *Otter Tail*, ADEQ made a determination that the alleged modification did not require permit action.

---

[16] Independence PSD economizer issues, Plaintiffs Ex. 2 at 9 (ECF 69-2); Plaintiffs Ex. 3 at 40 (ECF 69-3); Independence NSPS issues, Plaintiffs Ex. 5 at 19 (ECF 69-5); White Bluff PSD economizer issues, Plaintiffs Ex. 10 at 5-36 (ECF 69-10); Plaintiffs' Ex. 12 at 6-11 (ECF 69-12); White Bluff opacity issues, Plaintiffs Ex. 10 at 50-62 (ECF 69-10); Plaintiffs' Ex. 12 at 14-15 (ECF 69-12).

[17] *See* footnote 2, *supra*.

Plaintiffs' argument in this case is beside the point.  Plaintiffs argue that there was no permit proceeding for which it could obtain judicial review under § 7607 because there was no permit application for the alleged PSD modification.   Thus, they contend, there is no statutory bar to jurisdiction under § 7607(b)(2).   In *Otter Tail*, however, the § 7607(b)(2) bar was applied only to the NSPS claims, not the PSD claims, which had already been dismissed under the statute of limitations.   Under *Otter Tail*, Plaintiffs' PSD claims here also must be dismissed because of the five-year statute of limitations.

Additionally, in *Nucor*, the PSD claims were dismissed under § 7604(a) because the alleged failure to obtain a PSD permit was a one-time event that was not continuing, and the facility had a facially valid permit.   825 F.3d at 450.   Likewise, Plaintiffs' PSD claims here must be dismissed under § 7604(a) because Entergy's alleged failure to obtain a PSD permit was a one-time event that is not continuing, and Entergy had a facially valid permit for White Bluff and Independence. Consequently, as to Plaintiffs' PSD-based claims, it makes no difference whether Entergy submitted a permit application for the modifications.   Even so, as discussed in Section VII, Sierra Club could have obtained review of its PSD-based claims if it had not voluntarily withdrawn its objection to the White Bluff and Independence permits.

## VII.   PLAINTIFFS' ARGUMENT THAT EPA WILL NO LONGER ADDRESS STATE PSD APPLICABILITY DETERMINATIONS THROUGH THE TITLE V PETITION PROCESS DOES NOT VEST THE COURT WITH JURISDICTION OF PLAINTIFFS' PSD CLAIMS UNDER §7604.

On pages 20 through 23 of their Opening Brief, Plaintiffs argue that EPA's recently announced interpretation that it will no longer address PSD issues in Title V objections means that the § 7607(b)(2) preclusion is no longer a bar to jurisdiction under § 7604(a).   (ECF 69).   The Title V petition process invokes the authority of EPA to review a Title V permit, and serves to determine when the administrator's action on such a petition is subject to judicial review in the

court of appeals under § 7607(b)(1).   If judicial review of a Title V permit could have been

obtained under § 7607(b)(1), then under § 7607(b)(2), such action is not subject to judicial review

in a citizens suit under § 7604(a).   *Otter Tail*, 615 F.3d at 1020.   That does not mean that Plaintiffs

do not otherwise have to meet the subject matter jurisdictional requirements of § 7604(a), however.

The limitations of § 7604(a) and the bar in § 7607(b)(2) are not mutually exclusive.

Thus, EPA's new interpretation does not rescue Plaintiffs' PSD-based claims, because

those claims still must meet the requirements of § 7604(a) in order for the Court to have jurisdiction

of those claims.   *Nucor*, 825 F.3d at 450.   More to the point, EPA's new interpretation was first

announced in an EPA Title V Petition decision in *PacifiCorp Energy Hunter Power Plant*, Petition

VIII-2016-4,[18] which currently is on appeal before the Tenth Circuit Court of Appeals, *Sierra

Club v. EPA*, Docket No. 18-9507.   Sierra Club has obtained judicial review of EPA's decision in

that case, but, for whatever reason, Sierra Club chose to voluntarily withdraw its Title V Petitions

in the White Bluff and Independence cases before EPA issued a decision on those petitions.[19]   If

Sierra Club had waited for EPA to issue a decision on its White Bluff and Independence petitions,

then Sierra Club could have obtained judicial review of those decisions by filing a petition for

review with the Eighth Circuit Court of Appeals, just as it did by filing a petition for review in the

Tenth Circuit on EPA's *PacifiCorp Energy* Title V objection decision.   Therefore, § 7607(b)(2)

still bars both Sierra Club's PSD-based and its Title V-based claims in this case since Sierra Club

could have obtained judicial review if it had not withdrawn its Title V objections.

---

[18]  A copy of this decision is attached hereto as Exhibit Y.

[19]  *See* Plaintiffs' Ex. 9 (ECF 69).

**VIII.   THE STATUTE OF LIMITATIONS DEFENSE IS JURISDICTIONAL.**

Plaintiffs contend that 28 U.S.C. § 2462 is a nonjurisdictional statute of limitations and is not a jurisdictional bar to this Court entertaining this case.   Their opening brief concludes that the Defendants waived the statute of limitations defense because the ordinary civil rules of forfeiture and waiver of affirmative defenses in Federal Rules Civil Procedure 8(c) and 12(b) apply.   In support of their contention, Plaintiffs cite *United States v. Hines*, No. 3:16-cv-1477-J-32PDB, 2017 WL 6536574, at *2 (M.D. Fla. Dec. 21, 2017), and *SEC v. Amerindo Inv. Advisors*, 639 F. App'x 752, 754 (2d Cir. 2016).   These cases do not represent precedent for this Court, however.   Nor should they be viewed as persuasive authority.   First, neither case is from the Eighth Circuit or United States Supreme Court.   Second, neither order actually analyzes whether 28 U.S.C. § 2462 is jurisdictional.   Although the *Hines* court states that it analyzed the statute, it did not set forth its analysis in its opinion.   2017 WL 6536574, at *2.   The *Amerindo Inv. Advisors* opinion merely summarily concluded that the Appellants did not meet the burden of proving the statute is jurisdictional.   639 F. App'x at 754 (citing *United States v. Kwai Fun Wong*, 575 U.S. 402, 410-11 (2015)).   This Court should not rely on these cases but should conduct its own analysis of the statute.

As set forth in the Coalition's Opening Brief, a jurisdictional statute of limitation is one where Congress has stated that the time limit has jurisdictional consequences; otherwise, a statutory time bar is just a "claim processing rule" that does not deprive a court of the authority to hear a case.   That does not mean "Congress must incant magic words."   Rather, traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences.   *Kwai Fun Wong*, 575 U.S. at 408–10 (citations omitted).   Most

important is whether the text speaks only to a claim's timeliness, or to the court's power.   *Id.* at 410.

Here, the language of the relevant statute of limitations, 28 U.S.C. § 2462, is clear and demonstrates that it is jurisdictional in nature.   The statute provides a time frame within which the court has the power to "entertain" a claim.   Thus, the statute defines the time period during which a court has jurisdiction over a claim.   This starkly contrasts to the "mundane statute-of-limitations language" assessed by the *Kwai* court, which stated "[a] tort claim against the United States shall be forever barred unless it is presented [to the agency] within two years . . . or unless action is begun within six months" of the agency's denial of the claim.   Such a run-of-the-mill statute of limitations is directed at a litigant and merely spells out a litigant's filing obligations. [20] Conversely, 28 U.S.C. § 2462 restricts a court's authority to hear a claim and thus its jurisdiction. As stated in the Coalition's Opening Brief, because the applicable statute of limitations in this case is jurisdictional, it may not be waived, it may be asserted at any time, and it is incumbent on the Court to apply the statute *sua sponte* to determine whether the Court has subject matter jurisdiction of the Plaintiffs' claims.

---

[20] In *Musacchio v. United States*, 136 S.Ct. 709 (2016), the Court analyzed a criminal statute-of-limitations which read: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried or punished for any offense, not capital, *unless the indictment is found or the information is instituted within five years* after such offense shall have been committed."   136 S.Ct at 717 (emphasis adde)].   The Court found the statute not jurisdictional.   *Id.*   Again, the relevant statute-of- limitation here, 28 U.S.C. § 2462, is clearly different than the statute in *Musacchio*.   That statute merely addresses the time period by which a defendant must be prosecuted, while the statute here addresses the time period in which a court has the authority to entertain a claim, thus making it jurisdictional and not merely a time bar.

IX.   **Plaintiffs' Attempt to Distinguish the South Dakota SIP and the Arkansas SIP Is Unavailing.**

In footnote 13 of Plaintiffs' Opening Brief, Plaintiffs argue that *Otter Tail* does not preclude its claim because "the outcome might have been different" due to differences in the South Dakota SIP at issue in *Otter Tail* and the Arkansas SIP, which governs here.   (ECF 69 at 42).   In *Otter Tail*, Sierra Club tried to bolster its demonstrably weak interpretation of the federal statutory and regulatory PSD and citizen suit provisions by arguing that the following language from the South Dakota SIP meant that the requirement to obtain a PSD pre-construction permit was a continuing obligation:

> "a person may not construct, install, modify, revise, or operate any source or unit . . . until the applicable preconstruction permit or Part 70 operating permit has been issued."

615 F.3d at 1015.   The Court stated that Sierra Club's interpretation was incorrect because it sought to add words to that rule that were not there; it stated:

> Sierra Club reads those requirements in the conjunctive, effectively replacing "or" with "and."   In fact, the rule simply says that a facility must have the permit "applicable" to the activity it seeks to undertake – whether construction or operation – but it does not indicate which permit is applicable to which activity.   It thus provides no interpretive guidance here.

*Id.* at 1015-16.   This argument is not available to Sierra Club here under the Arkansas regulatory program because Arkansas is a unified permit state that issues a "combined" PSD construction permit and Title V operating permit.[21]

More to the point, however, is that Sierra Club's expansive reading of the Arkansas SIP suffers from the same defects as its reading of the South Dakota SIP.   In footnote 13, Sierra Club argues that § 26.301 of the Arkansas SIP prohibits operation "without a proper part 70 permit."

---

[21] *Nucor*, 825 F.3d at 447.

(ECF 69 at 42).   The word "proper" appears nowhere in section §26.301, however, just as the word "and" did not appear in the South Dakota SIP.   Sierra Club also ignores language in Regulation 26 that limits these provisions to "significant modifications," such as the following:

> *This applies only to significant modifications* and does not apply to modifications that qualify as minor modifications or changes allowed under the operational flexibility provisions of a part 70 permit.   Ark. Reg. § 26.301(C).

> Part 70 sources proposing to construct a new emissions unit or modify an existing emissions unit shall apply for and obtain a modified part 70 permit prior to the construction or modification of such emissions unit. This applies only to significant modifications and *does not apply to modifications that qualify as minor modifications or changes allowed under the operational flexibility provisions* of a part 70 permit.   Ark. Reg. § 26.405.

> [T]he installation of new emissions units and the modification of existing emissions units may not commence until a final permit for such activity is issued, *unless such activity involves equipment exempt from permitting requirements or modifications eligible to be processed through minor permit modification procedures*.   Ark. Reg. § 26.505.

Furthermore, Plaintiffs' reliance on the "proper" permit argument also flies in the face of the Court's holding in *Nucor*.   There, the Eighth Circuit rejected the argument that the phrase "without a permit" in § 7475(a) meant "without a permit that complies with the CAA."   *Nucor*, 825 F.3d at 451.   The Eighth Circuit held that such an argument constitutes a "collateral attack" on the permit, and that the "proper means for such an attack lies in the state judicial review Nucor already sought," citing 40 CFR § 70.4(b)(3)(x).   *Id.*

Sierra Club's argument in footnote 13 fails.   As previously noted, both White Bluff and Independence have Title V permits that address the emission units that form the basis of Sierra Club's claims.   Sierra Club raised its concerns during the Title V permitting process.   ADEQ responded to those concerns and issued the permits.   Sierra Club did not appeal those permits through the judicial review process allowed under Arkansas law, and as required by Title V of the

Clean Air Act.[22]   And as discussed, Sierra Club voluntarily dismissed its Title V objections to these permits.   Consequently, Sierra Club's claims in this case are nothing more than a collateral attack on the White Bluff and Independence permits.

## CONCLUSION

For the reasons explained in its Opening Brief, the Court should permit the Coalition to intervene and fully participate in this action as a party to protect its economic interests.   In doing so, however, the Court must also examine whether it may entertain Plaintiffs' suit at all.   As explained herein, Plaintiffs' claims are jurisdictionally barred for numerous reasons.   The Court lacks subject matter jurisdiction over Plaintiffs' claims.   Plaintiffs lack standing.   And Plaintiffs' claims are barred by the statute of limitations.

Plaintiffs' PSD-based claims fail because Plaintiffs complain only of one-time alleged offenses, not alleged repeated violations, as § 7604(a)(1) specifically requires, and because Plaintiffs complain about actions that Defendants' facially valid permits allow.   Plaintiffs' opacity claims are similarly outside the scope of the Court's jurisdiction.   Plaintiffs complain that Defendants violated certain EPA regulations, but opacity claims are limited to claims that a defendant either failed to obtain a permit, or violated a term of a permit—not that the defendant violated an underlying EPA regulation.   Moreover, Plaintiffs make no attempt to segregate their opacity allegations to account for opacity exceedances that Defendants' permits expressly allow

---

[22] *See* 42 USC § 7661a(b) requiring the EPA Administrator to develop regulations for Title V programs to require procedures for "expeditious review of permit actions, including applications, renewals, or revisions, and including an opportunity for judicial review in State court of the final permit action by the applicant, any person who participated in the public comment process, and any other person who could obtain judicial review of that action under applicable law."   *See also* 40 CFR § 70.4(x) which requires state Title V programs to " [p]rovide an opportunity for judicial review in State court of the final permit action by the applicant, any person who participated in the public participation process provided pursuant to § 70.7(h) of this part, and any other person who could obtain judicial review of such actions under State laws."

during start up, shut down, and malfunction.   Indeed, the ADEQ has the primary authority to address all of the Plaintiffs' complaints.   Plaintiff may not make an end-run around the State's valid permit process with its lawsuit.   Plaintiffs' PSD-based and opacity claims are blatant collateral attacks on Defendants' facially valid permits that, as a matter of law, are beyond the bounds of the Court's subject matter jurisdiction.

The Court should permit the Coalition to intervene in this matter to protect its interests.   In doing so, the Court should conclude it lacks subject matter jurisdiction over Plaintiffs' claims and dismiss Plaintiffs' suit.

Respectfully submitted:

/s/ Danica L. Milios
JACKSON WALKER, L.L.P.
100 Congress, Suite 1100
Austin, Texas 78701
Telephone:   (512) 236-2346
Facsimile:   (512) 391-2122
Danica L. Milios
*dmilios@jw.com*
Michael Nasi
*mnasi@jw.com*

/s/ Mark H. Allison
DOVER DIXON HORNE, PLLC
425 West Capitol Avenue, Suite 3700
Little Rock, Arkansas 72201
Telephone:   (501) 375-9151
Facsimile:   (501) 375-6484
Mark H. Allison, AR Bar No.: 85001
*mallison@ddh.law*
Randall L. Bynum, AR Bar No.: 89194
*rbynum@ddh.law*

***ATTORNEYS FOR ARKANSAS
AFFORDABLE ENERGY COALITION***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2020, I filed the foregoing with the Clerk of the Court, which shall send notification of such filing using the CM/ECF system to the following persons registered to receive such notice:

Richard H. Mays, Esq.
Richard Mays Law Firm PLLC
2226 Cottondale Lane, Suite 100
Little Rock, AR 72202
rmays@richmayslaw.com

George E. Hays, Esq.
P. O. Box 843
Bellevue, WA 98009
georgehays@mindspring.com

Naomi Kim Melver
P. O. Box 25
Greenbank, WA 98253
nmelver@gmail.com

John Peiserich, Esq.
G. Alan Perkins, Esq.
PPGMR Law, PLLC
101 Morgan Keegan Drive, Suite A
Little Rock, AR 72202
john@ppgmrlaw.com
alan@ppgmrlaw.com

Timothy K. Webster, Esq.
SIDLEY AUSTIN L.L.P.
1501 K Street, N.W.
Washington, DC 20005
twebster@sidley.com

Debra J. Jezouit, Esq.
Baker Botts L.L.P.
1299 Pennsylvania Ave. N.W.
Washington, DC 20004
Debra.jezouit@bakerbotts.com

Kimberley Bennett, Esq.
ENERGY SERVICES, LLC
425 West Capitol Ave., Suite 28E
Little Rock, Arkansas 72201
Kbenne3@entergy.com

Susan Margaret Floyd, Esq.
ENTERGY SERVICES, LLC
639 Loyola Avenue, 22nd Floor
New Orleans, Louisiana 70113
sfloyd@entergy.com

Sarah Tacker, Esq.
Senior Assistant Attorney General
ARKANSAS ATTORNEY GENERAL'S OFFICE
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Sarah.Tacker@ArkansasAG.gov

Christina L. Baker, Ark. Bar No. 2016001
Assistant Attorney General
Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-13625
Christina.Baker@ArkansasAG.gov

/s/ Mark H. Allison

LIST OF EXHIBITS

X      August 9, 2013 Malfunction Notification email (available at ADEQ Zylab database as Doc. Z0001OTGC)

Y      *PacifiCorp Energy Hunter Power Plant*, Petition VIII-2016-4 decision