## Declaration of Victoria R. Stamper

I, Victoria R. Stamper, declare that the following statements are true and correct to the best of my knowledge, information and belief, and are based on my personal knowledge.

1. I, Victoria R. Stamper, have thirty-years of experience in the field of air pollution regulations and control.  This experience includes ten years of work in government for the U.S. Environmental Protection Agency and eighteen years of work as a consultant.  A copy of my Curriculum Vitae is attached as Attachment 1.

2. I received a Bachelor of Science Degree in Civil Engineering from Michigan State University in 1989.

3. In 1989, I began work for an environmental consulting firm in Seattle, Washington.  I designed and implemented research projects on air pollution control systems and prepared air quality permit applications, including emissions calculations and preparation of data for air modeling.

4. From 1991 to 2001, I worked at the EPA Region VIII office in Denver as an Environmental Engineer.  I became the lead staff member on new source review (NSR) requirements of state implementation plans.  I reviewed all aspects of NSR permitting regulations to ensure compliance with federal regulations for each of the six states in EPA Region VIII.  Over the course of ten years with the EPA, I acquired expert knowledge on Clean Air Act requirements and federal regulations pertaining to NSR.

5. While working at EPA, I also developed expertise in evaluating PM-10 nonattainment plans and state pollution control regulations.  I advised Indian tribes in developing tribal implementation plans and pre-construction permitting programs.  I also worked on approvals of state visibility plans for national parks and wilderness areas (i.e., Federal Class I areas).

6. In 2001, after leaving the EPA, I was retained to research potential Clean Air Act violations, including violations of emission limits.

7. In 2003, I started an independent consulting business that provides technical services on air quality issues.  My work has primarily been contracted by non-governmental organizations and is often from the perspective of outside review of work done by and for federal, state, and local air pollution control governmental agencies.

8. Since 2003, I have been and continue to be regularly retained to evaluate and provide comments and expert reports on proposed air quality permits for coal-fired power plants and other industrial facilities.  The scope of my permit reviews including evaluation of best available control technology (BACT) determinations, maximum achievable control technology (MACT) for control of air toxics, and emission inputs for air modeling analyses, among other things.

9. Since 2003, I have reviewed and have assisted with comments, or provided expert comments, on BACT determinations for approximately 20 proposed new coal-fired power plants.

10. Beginning approximately in 2009, I began providing review and comments including expert reports on regional haze plans.  The scope of my reviews included evaluating best available control technology (BART) and controls to achieve reasonable progress towards the national visibility goal.  I conducted and/or reviewed cost analyses for various air pollution controls to be retrofitted to existing coal-fired power plants and other facilities.  I also researched and evaluated achievable emission rates with various air pollution controls at coal-fired power plants.  I further assisted with evaluating actual emission rates of existing coal-fired power plants and recommending emission rates to be modeled to assess regional haze improvement, including for pollution control technologies being considered.

11. In the past eleven years as a consultant, I have reviewed and assisted with comments, or provided expert comments, on the regional haze plans for approximately 17 states.

12. I reviewed and provided expert comments on the following federal and state proposed regional haze plan and plan revisions in Arkansas, including the BART and regional haze requirements for the Entergy-Arkansas White Bluff and Independence Generating Stations: the Environmental Protection Agency's (EPA's) April 8, 2015 proposed federal implementation plan (FIP) to address regional haze and visibility transport requirements in Arkansas; and the Arkansas Department of Environmental Quality's October 2017 proposed revisions to its regional haze state implementation plan (SIP).

13. Throughout my career, calculating emission rates has been a necessary part of my work.  In my first position working with an environmental consulting firm, I helped prepare air permit applications which must include estimates of air emissions.  In my time with EPA, I evaluated states' plans to attain the National Ambient Air Quality Standards (NAAQS), which required a determination that the plans' control measures would result in the claimed emissions reductions. Also, when I was with EPA, I helped evaluate and estimate appropriate emissions for prevention of significant deterioration (PSD) increment consumption analyses.   In addition, I often reviewed state plan revisions to stationary source emission standards during my time at EPA, which required evaluations of how such a change in emission standards would change facilities' actual or allowable emissions.  In my work since leaving EPA, I have evaluated power plant's compliance with emission limits, which requires analysis of emissions data reported to EPA's Air Markets Program database.  On numerous occasions, I have also evaluated and developed appropriate emission rates to model for a source's compliance with PSD increments and the NAAQS.  In addition, I have determined appropriate emission rates to model for assessing a

source's impacts on visibility in a Class I area, as well as estimated the expected reduced

emission rates with air pollution controls being considered for adoption.  Calculating emission

rates for air emissions sources has been a regular part of my work for my entire career.

14.  I was asked by Sierra Club and the National Parks Conservation Association to determine the air

emission rates to have modeled for the Independence and White Bluff Generating Stations to

assist an air quality modeling expert, Dr. Andrew Gray, in his analysis of whether haze and/or

impaired visibility conditions described in the declarations of the Sierra Club's and/or National

Parks Conservation Association's members is attributable in whole or in part to air pollution

emitted from the Independence Steam Electric Station (Independence) located in Newark,

Arkansas and/or the White Bluff Steam Electric Station (White Bluff) located in Redfield,

Arkansas.

15. In the context of the regional haze program of the Clean Air Act, which is designed to improve

visibility in certain national parks and wilderness areas called "Class I areas," the EPA has

established an air dispersion modeling methodology for assessing whether an individual source

of air pollution is considered to cause or contribute to visibility impairment.  Specifically, EPA

recommends that the 24-hour average actual emission rate from the highest emitting day of a

source be modeled to assess whether a facility is considered to cause or contribute to regional

haze. *See* 40 C.F.R. Part 51, Appendix Y, Section III.A.3., Option 1, 2.  In terms of air

pollutants to be modeled, EPA states that sulfur dioxide ("SO2"), nitrogen oxides ("NOx"), and

direct particulate matter ("PM") including those particles with an aerodynamic diameter of 10

microns or less ("PM10") and the fine particles with an aerodynamic diameter of 2.5 microns or

less ("PM2.5") should be modeled in determining whether a source causes or contributes to

visibility impairment.  *See* 40 C.F.R. Part 51, Appendix Y, Section III.A.2.

16. To determine emissions to model, I evaluated the most recent two years of actual emissions data (2018 and 2019) for Independence and White Bluff to reflect the plant's actual emissions.  The use of the most recent two years of data to reflect current actual emissions is consistent with the timeframe used by EPA in defining "actual emissions" in its prevention of significant deterioration (PSD) regulations at 40 C.F.R. §52.21(b)(21)(ii).   In addition, the most recent two years of emissions was used to ensure that pollution controls recently installed at each unit were reflected in the modeling, to counter any claim that the modeling did not reflect current visibility impacts being observed by the Sierra Club and NPCA members.  Those pollution controls recently installed included the NOx controls of low NOx burners and separated overfire air were installed at each unit in recent years as follows:  Independence Unit 1: (October 20, 2017), Independence Unit 2:  December 18, 2017, White Bluff Unit 1:  June 1, 2018, and White Bluff Unit 2:  June 4, 2017.  These dates of startup of these NOx pollution controls were reported in its EPA Air Markets Program Database.

17. EPA regional haze guidelines call for modeling the twenty-four hour average emission rate from the maximum emitting day for each visibility-impairing pollutant at a source to determine if a source is considered to cause or contribute to visibility impairment in a Class I area and therefore is considered to be "subject to BART."  *See* 40 C.F.R. Part 51, Appendix Y, Section III.A.3.  To reflect a high daily emission rate but not necessarily reflect the maximum emitting day, I determined the 90th percentile maximum emitting day over 2018 to 2019 for SO2 from the Independence plant and for NOx from the White Bluff plant.  The 90th percentile emissions  day (or 73rd highest emitting day over the 2018 to 2019 timeframe) was selected to ensure that the modeling to assess the haze impacts claimed by Sierra Club and NPCA members was based on

emissions that occurred with sufficient frequency.  The 90th percentile emissions day would occur on average about once every 10 days.

18. Specifically, I downloaded the daily emissions of SO2 and NOx for Independence and White Bluff from EPA's Air Markets Program Database for 2018 and 2019.  I summed the daily emissions for each of the two units at each power plant to determine plantwide emissions on each day of 2018 to 2019.  I then ranked the total plantwide SO2 emissions for the Independence plant, to reflect Sierra Club's and NPCA's claim that the plant undertook major modifications for SO2 without obtaining the proper PSD permits, and I ranked total plantwide NOx emissions for the White Bluff plant, to reflect Sierra Club's and NPCA's claim that the plant undertook major modifications for NOx without obtaining the proper PSD permit.  I next determined the 90th percentile day (that is, the 73rd highest day out of the two year period) of highest plantwide SO2 emissions for Independence and of the highest plantwide NOx emissions for White Bluff.  The SO2 and NOx emissions of the 90th percentile day for each plant then were converted from tons of emissions per day to 24-hour average pounds per hour (lb/hr) emissions rates (by multiplying tons by 2000 pounds per ton and dividing by 24-hours in a day).  The SO2 and NOx emissions reported to EPA's Air Markets Database generally reflect the operation of continuous emissions monitoring systems (CEMs), which are required to be operated at power plant units like Independence and White Bluff and measure actual emissions each hour of the day, every day of the year.  The EPA's Air Markets Program Database does not include PM emissions data, but those emissions can be determined with the heat input data which is reported to EPA's Air Markets Program Database.  Heat input is a measure of the energy value of the coal burned and is reported in terms of million British Thermal Units per hour (MMBtu/hr). Thus, I also determined the 24-hour average heat input to each unit at Independence and at White Bluff on

the 90th percentile day to be used to determine appropriate PM emissions to model for the 90th

percentile day.  Based on this methodology, I provided the following SO2 and NOx emission

rates to Dr. Andrew Gray for the dispersion modeling analysis.

**Table 1.  Current 90th Percentile Emissions for Independence and White Bluff**

| Plant/Unit | 90th Percentile Day of Highest Plantwide SO2 (for Independence) or NOx (for White Bluff) Emissions Over 2018-2019 | Unit-Specific 24-Hour Average SO2 Emissions on 90th Percentile Day over 2018-2019, lb/hr | Unit-Specific 24-Hour Average NOx Emissions on 90th Percentile Day over 2018-2019, lb/hr | Unit-Specific 24-Hour Average Heat Input on 90th Percentile Day over 2018-2019, MMBtu/hr |
|---|---|---|---|---|
| Independence Unit 1 | 9/27/2019 | 3,478.75 | 884.83 | 5,343.21 |
| Independence Unit 2 | 9/27/2019 | 4,081.17 | 1,022.08 | 6,303.63 |
| White Bluff Unit 1 | 1/21/2019 | 4,673.17 | 1,354.00 | 8,806.91 |
| White Bluff Unit 2 | 1/21/2019 | 4,079.08 | 1,028.17 | 7,349.16 |

19. To determine PM emissions to model for the White Bluff and Independence units, I obtained

reports with PM continuous emissions monitoring data for these units that is reported to EPA

pursuant to the federal Mercury and Air Toxics rule, 40 C.F.R. Part 63, Subpart UUUUU.  Those

reports are available on EPA's WebFIRE database, available at  https://www.epa.gov/electronic-

reporting-air-emissions/webfire.  Specifically, I found the reported daily PM emission rate in

pounds of pollutant emitted per million British Thermal Units heat input (lb/MMBtu) for each

unit for the specific 90th percentile date shown in Table 1 and multiplied that daily PM emissions

rate by the unit-specific heat input on the 90th percentile day to arrive at a pound per hour PM

emission rate on the 90th percentile day.  These PM emissions are reflected in the table below.

**Table 2.  Current 90th Percentile Day PM Emissions for Independence and White Bluff**

| Plant/Unit | 90th Percentile Day of Highest Plantwide SO2 (Independence) or NOx (White Bluff) Emissions Over 2018-2019 | PM Emission Rate Reported for the 90th Percentile Day, lb/MMBtu | 24-Hour Average Unit-Specific Heat Input on 90th Percentile Day of Highest Plantwide SO2 (Independence) or NOx (White Bluff) Emissions over 2018-2019, MMBtu/hr | Unit-Specific PM Emissions on 90th Percentile Day of Highest Plantwide SO2 (Independence) or NOx (White Bluff) Emissions Over 2018-2019, lb/hr |
|---|---|---|---|---|
| Independence Unit 1 | 9/27/19 | 0.005922516 | 5,343.21 | 31.65 |
| Independence Unit 2 | 9/27/19 | 0.005041667 | 6,303.63 | 31.78 |
| White Bluff Unit 1 | 1/21/2019 | 0.012041472 | 8,806.91 | 106.05 |
| White Bluff Unit 2 | 1/21/2019 | 0.006354070 | 7,349.16 | 46.70 |

20. I was also asked to determine the emissions to model to assess the benefit to regional haze and visibility that would be expected to occur if the Independence and White Bluff units employed best available control technology (BACT) under the PSD permitting program for the major modifications alleged by Sierra Club and NPCA in the complaint.  As stated in the amended complaint, the Arkansas PSD program, as codified in the SIP at Regulation 19.904(A), incorporates by reference the requirements from 40 C.F.R. § 52.21(j)-(p).  BACT shall apply to the air pollutants triggering PSD review as a major modification.  *See* 40 C.F.R. § 52.21(j)(3). BACT is defined in pertinent part as an emission limitation "based on the maximum degree of reduction for each pollutant subject to regulation under [the Clean Air Act] which would be emitted from any proposed major stationary source or major modification through application of

production processes or available methods, systems, and techniques, including fuel cleaning or

treatment or innovated fuel combustion techniques for control of such pollutant.  In no event

shall application of best available control technology result in emissions of any pollutant which

would exceed the emissions allowed by any applicable standard under 40 C.F.R. Part 60 or

61…."  *See* 40 C.F.R. §52.21(b)(12) incorporated by reference into Arkansas Regulation

§19.903(D).  *See also* Section 169(3) of the Clean Air Act, 42 U.S.C. § 7479(3).

21. The emission standards promulgated under 40 C.F.R. Part 60 and Part 61, respectively, are

referred to as the New Source Performance Standards (NSPS) and National Emission Standards

for Hazardous Air Pollutants (NESHAPs).  Pursuant to the definition of BACT quoted above, no

BACT determination can be any less stringent than the applicable NSPS or NESHAP emission

standard.  EPA elaborated on this requirement in its October 1990 New Source Review

Workshop Manual:

> To satisfy the legislative requirements of BACT, EPA believes that the applicant must
> focus on technologies with a demonstrated potential to achieve the highest levels of
> control.  **For example, control options incapable of meeting an applicable New
> Source Performance Standard (NSPS)…would not meet the definition of BACT
> under any circumstances**.

EPA New Source Review Workshop Manual, October 1990, at B.12 (emphasis added).  This is

not to say that BACT reflects the level of control required in the NSPS for the source category.

As EPA explains:

> An NSPS simply defines the minimum level of control to be considered in the BACT
> analysis.  The fact that a more stringent technology was not selected for a NSPS…does
> not exclude that control alternative or technology as a BACT candidate.  When
> developing a list of possible BACT alternatives, the only reason for comparing control
> options to an NSPS is to determine whether the control option would result in an
> emissions level less stringent than the NSPS.  **If so, the option is unacceptable**."

*Id.*  (emphasis added).  Given the statutory requirements that BACT cannot be less stringent than

the NSPS, it is clear that although BACT is to be determined by the permitting authority on a

case-by-case basis for a major source or major modification, the resulting emission limit cannot be any less stringent than the NSPS.

22. For coal-fired electric utility steam generating units like Independence Units 1 and 2 and White Bluff Unit 2, the applicable NSPS emission standards are in 40 C.F.R. Subpart Da.  Specifically, for modified coal-fired electric utility steam generating units, the current NSPS emission standards establish an SO2 limit of either 10 percent of the potential combustion concentration (that is, a 90 percent reduction) or 180 nanograms per joule (1.4 pounds per megawatt-hour (lb/MW-hr)) gross energy output, and the NOx limit is 140 nanograms per joule (1.1 lb/MW-hr) gross energy output.  *See* 40 C.F.R. §§60.43Da(l)(2) and 60.44Da(g)(3), respectively.  These NSPS emission standards apply on a 30 successive boiler operating day average basis.  *See* 40 C.F.R. §60.48Da(b).  Based on the BACT requirement that the BACT emission limit can be no less stringent than the NSPS limit, the SO2 BACT limit for the alleged major modification at each Independence Unit 1 and Unit 2 can be no less stringent than either 90 percent reduction in SO2 or 1.4 lb/MW-hr gross energy output, and the NOx BACT limit for the alleged major modification at White Bluff can be no less stringent than 1.1 lb/MW-hr.

23. To determine a daily emission rate to model for each unit to reflect the minimum level of emission reduction expected with application of BACT, I used the methodology followed by EPA for estimating the visibility benefits of a BART control.  *See* 40 C.F.R. Part 51, Appendix Y, Section IV.D.5.  Specifically, one determines the percent reduction that the controlled emission limit will require from the emission rate from the time period before the BART (or, in this case, before BACT) emission reduction requirements were imposed and then reduces the modeled 24-hour average rate by the percent reduction that would be required by the BACT emission limit -- to arrive at an expected  maximum daily emission rate expected with

compliance with the BART limit.  This methodology was necessary because regional haze impairment is measured based on daily impacts, but the BART emission limits typically applied on a 30-day average basis, similar to the NSPS limits.

24. I used this methodology to derive expected 90th percentile SO2 rates for Independence Units 1 and 2 and a 90th percentile NOx emission rate for White Bluff Unit 2 to reflect compliance with BACT limits that are equal to the NSPS limits (i.e., the minimum level of BACT emission reduction) for these pollutants.  Specifically, I first determined the annual SO2 emission rates in terms of lb/MW-hr gross energy output for Independence Units 1 and 2 and averaged over the 2018-2019 timeframe.  I also determined the annual NOx emission rates in terms of lb/MW-hr gross energy output for White Bluff Unit 2 and averaged over 2018-2019.  The gross load of each unit in MW-hours is reported to EPA's Air Markets Program Database along with the emissions data, so one can readily convert the tons of SO2 or NOx reported per year to pounds and divide by the reported gross MW-hours produced for the year to arrive at annual lb/MW-hr gross load emission rates.  I then determined the percent emission reduction that would need to occur to achieve the NSPS limit from the annual average rate that occurred over 2018-2019.  For Independence Units 1 and 2, the SO2 reduction efficiencies to achieve the 1.4 lb/MW-hr SO2 NSPS emission limit were 72.00 percent and 72.34 percent, respectively.  For White Bluff Unit 2, the NOx reduction efficiency to achieve the 1.1 lb/MW-hr NOx NSPS limit is 26.67 percent.  This is the commonly-applied approach for determining peak 24-hour average emissions reflective of BART to model to show improvements in visibility impairment.

25. Using these expected removal efficiencies, one can calculate the expected 90th percentile daily SO2 and NOx emission rates expected if BACT for SO2 at Independence Units 1 and 2 and BACT for NOx at White Bluff Unit 2 required the NSPS emission limits to be met, which are the

least stringent BACT limits that could be set for the alleged major modifications at each unit.

These expected emission rates expected under the least stringent BACT determination expected

for Independence Units 1 and 2 and White Bluff Unit 2 are provided in Table 3 below.

**Table 3.  Unit-Specific SO2 or NOx Emissions Expected on 90th Percentile Day Reflective of the Minimum Degree of Emission Reduction Expected with a BACT Limit Equal to the NSPS Limits.**

| Plant/Unit | Unit-Specific SO2 (Independence) or NOx (White Bluff) Emissions on 90th Percentile Day over 2018-2019, lb/hr | Expected Percent Reduction with Minimum BACT Limit Equating to NSPS, lb/hr | Unit-Specific SO2 or NOx Emissions Expected on 90th Percentile Day Reflective of the Minimum Degree of Emission Reduction Expected with BACT, lb/hr |
|---|---|---|---|
| Independence Unit 1 SO2 | 3,478.75 | 72.00% | 974.05 |
| Independence Unit 2 SO2 | 4,081.17 | 72.55% | 1,120.28 |
| White Bluff Unit 2 NOx | 1,028.17 | 26.67% | 753.95 |

26.    I was asked by National Parks Conservation Association and Sierra Club to research and provide

the 8-hour average ozone concentrations that have exceeded the 8-hour ozone NAAQS in Shelby

County, Tennessee over 2017 to 2019.  That data is available on the EPA's Outdoor Air Quality

Data website under "Monitor Values Report," available at https://www.epa.gov/outdoor-air-

quality-data/monitor-values-report.  The 8-hour average ozone NAAQS is currently set at 0.070

parts per million (ppm).  *See* 40 C.F.R. §50.19(a).  According to the date reported on EPA's

Monitor Values Report for ozone, there are three ambient air monitors in Shelby County,

Tennessee for which 8-hour average ozone data was reported.  In 2017, there were two

exceedances of the 8-hour ozone NAAQS at the 1330 Frayser Blvd air monitor site and two

exceedances at the 6388 Haley Rd. (Shelby Farms Ncore) air monitor site.  In 2018, there were

two exceedances of the 8-hour ozone NAAQS at the 1330 Frayser Blvd ozone air monitor site, six exceedances at the 6388 Haley Rd. (Shelby Farms Ncore) air monitor site, and three exceedances at 6855 Mudville Rd air monitor site.  In 2019, there were three exceedances of the 8-hour ozone NAAQS at the 1330 Frayser Blvd air monitor site and one exceedance at the 6388 Haley Rd. (Shelby Farms Ncore) air monitor site.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  May 1, 2020

Victoria R. Stamper

13

**Attachment 1- Curriculum Vitae**

**Victoria R. Stamper**
P.O. Box 9571
Boise, Idaho 83707
stamper.vr@gmail.com

## Areas of Expertise

***Comprehensive knowledge of the Clean Air Act -*** accomplished in the requirements for new source review (NSR) and prevention of significant deterioration (PSD) construction permits including review of Best Available Control Technology (BACT) determinations, Title V operating permits, Maximum Achievable Control Technology (MACT) Approvals, Class I area protection including regional haze plans and best available retrofit technology (BART) determinations, and state implementation plans for compliance with the national ambient air quality standards (NAAQS).

***Extensive experience with the air pollution issues related to coal-fired power plants*** – have evaluated numerous PSD permit applications, best available control technology determinations, and best available retrofit technology determinations for the fossil fuel-fired electric utility industry.

## Professional Experience

Air Quality Consultant                                                                April 2003 to
Boise, ID 83707                                                                         Present

I provide consulting services on numerous air quality issues such as:
- Reviewing/preparing comments on all aspects of air quality construction and operating permit applications and permits for industrial sources including coal-fired power plants.
- Providing technical expertise for the appeal of air quality permits that do not comply with federal or state clean air requirements.
- Investigating facility compliance with federal and state air quality regulations.
- Analyzing proposed or available mercury and other hazardous air pollutant controls for coal-fired power plants.
- Reviewing and commenting on Class I regional haze and visibility protection plans.
- Evaluating proposed best available retrofit technology determinations.
- Critiquing prevention of significant deterioration increment analyses.
- Evaluating and commenting on air quality analyses and environmental impact statements for proposed oil and gas development in the West.

**Professional Experience (continued)**

<u>Environmental Engineer/Legal Assistant</u>                           May 2001 to
Reed Zars, Attorney at Law                                            April 2003
Laramie, WY 82070

*Responsibilities included:*
- Investigating industrial facilities' compliance with Clean Air Act requirements through review of public documents.
- Researching pollution reduction measures and effectiveness.
- Preparing comments on proposed air quality construction and operating permits
- Reviewing and preparing written comments on proposed EPA state implementation plan approvals regarding topics such as opacity regulations, emission limit exemptions, Class I area visibility plans and permitting regulations.

<u>New Source Review Program Manager</u>                              December 1990
Air and Radiation Program                                            to April 2001
U.S. Environmental Protection Agency, Region VIII
Denver, Colorado 80202

*Responsibilities included:*
- Serving as the Region VIII lead for state rules regarding the new source review and prevention of significant deterioration programs, as well as other industrial source control measures.
- Reviewing all aspects of prevention of significant deterioration increment analyses.
- Reviewing state implementation plans for consistency with requirements of Clean Air Act.
- Preparing documents to justify EPA approval or disapproval of state submittals.
- Educating and assisting tribes in developing regulations for tribal implementation plans.
- Participating in workgroups to ensure national consistency and provide input on rulemakings.
- Reviewing state operating permit programs under Title V of the Clean Air Act.
- Researching and compiling the EPA-approved state implementation plans.
- Developing and reviewing state implementation plans for particulate matter nonattainment areas, as well as assisting in the preparation of requests to redesignate to attainment.
- Reviewing environmental impact statements for consistency with the Clean Air Act.
- Serving as primary contact for air quality issues in the state of Wyoming.

**Professional Experience (continued)**

<u>Environmental Engineer</u>                                                                August 1989-
Envirometrics, Inc.                                                                           July 1990
Seattle, Washington 98103

*Responsibilities included:*
- Designing components of research projects pertaining to pollution control systems.
- Developing testing criteria and measuring the effectiveness of these control systems.
- Preparing air pollution permit applications and related documentation for industrial sources.
- Compiling input data for modeling of ambient air quality impacts on Class I areas.
- Developing emission inventories.

**Education**

Bachelor of Science Degree
Civil Engineering, Michigan State University
East Lansing, Michigan

**Selected Reports and Papers**

- Stamper, V., Technical Support Document to Comments of Conservation Organizations; Proposed Revisions to Arkansas Regional Haze State Implementation Plan, February 1, 2018.

- Stamper, V., Technical Support Document to Comments of Conservation Organizations; EPA Proposed Regional Haze and Interstate Visibility Transport Federal Implementation Plan for Texas, May 3, 2017.

- Stamper, V., Technical Support Document in Support of NPCA and RE Comments on PSD Permit No. 16-0, BP West Coast Products LLC Cherry Point Refinery, December 15, 2016.

- Stamper, V., Technical Support Document to Comments of Conservation Organizations; EPA's Proposed Rulemaking Regarding Utah's Regional Haze Plan, March 14, 2016.

- Stamper, V., Technical Support Document to Comments of Conservation Organizations; EPA's Proposed Regional Haze and Interstate Visibility Transport Federal Implementation Plan for Arkansas, August 5, 2015.

**Selected Reports and Papers (continued)**

- Stamper, V., Technical Support Document to Comments of Conservation Organizations; EPA's Proposed Reasonable Progress Measures for Texas and Oklahoma, April 27, 2015.

- Stamper, V., Technical Support Document to Comments of Conservation Organizations, Proposed Federal Implementation Plan to Address Regional Haze Requirements for Navajo Generating Station Units 1, 2 and 3, December 30, 2013.

- Stamper, V., Technical Support Document to Comments of Conservation Organizations, EPA's Proposed Action on Wyoming Regional Haze, August 21, 2013.

- Stamper, V., Technical Support Document to Comments of Conservation Organizations; Proposed Wyoming Regional Haze Partial SIP Approval and Partial FIP, August 1, 2012.

- Stamper, V., C. Copeland, M. Williams, and T. Spencer (contributing editor), *Poisoning the Great Lakes:  Mercury Emissions from Coal-Fired Power Plants in the Great Lakes Region*, Natural Resources Defense Council Publication, June 2012.

- Fox, Phyllis and V. Stamper, Technical Support Document to Comments of Conservation Organizations: Proposed Montana Regional Haze FIP, June 15, 2012.

- Stamper, V., Evaluation of Whether the SO2 Backstop Trading Program Proposed by the States of New Mexico, Utah and Wyoming and Albuquerque-Bernalillo County Will Result in Lower SO2 Emissions than Source-Specific BART, May 25, 2012.

- Technical Support Attachment to Comments of Conservation Organizations; Minnesota Regional Haze SIP Proposed Approval – February 21, 2012.

- Stamper, V., Review of EPA's Proposed Best Available Control Technology (BART) Requirements for the Four Corners Power Plant on Navajo Nation Land, April 28, 2011.

- Stamper, V. and C. Copeland, *Stop the Rollbacks, Cleaner, Healthier Air for Colorado*, Environmental Defense publication, 2005.

- Banerjee, S. and V. Stamper, *Mercury Air Pollution: The Case for Rigorous MACT Standards For Subbituminous Coal*, prepared for Rocky Mountain Office of Environmental Defense and the Land and Water Fund of the Rockies, May 2003.